629 So.2d 152 (1993)
Nathan HILLS, Appellant,
v.
STATE of Florida, Appellee.
No. 91-3036.
District Court of Appeal of Florida, First District.
July 22, 1993.
Rehearing Denied January 21, 1994.
*153 Nancy A. Daniels, Public Defender, Abel Gomez, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Charlie McCoy, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant seeks reversal of his conviction for possession of cocaine, arguing that the lower court erred by denying his motion to suppress. We agree, and therefore overturn appellant's conviction.
It was established at the suppression hearing that on the night of the arrest police officers Scott Skrove and Howard Stoll, members of the narcotics unit, were surveying for narcotics-related activities on North Macomb Street, an area known for drug transactions. Skrove testified that he and his partner saw a car pull into a parking lot on the 300 block of North Macomb Street. Three males exited the vehicle and met a fourth individual at a soda machine. Stoll testified that drug transactions had occurred at this machine. Skrove testified that he recognized two of the three men who exited the car. However, the officer did not explain his acquaintance with these men; that is, there was no testimony that Skrove recognized these men as prior offenders. The four men huddled together for a short time, *154 then the fourth man opened his hand, palm up, and appeared to be showing the contents of his palm to the others. Shortly thereafter, the four parted company. The three returned to the car, which left the parking lot, and the fourth walked away. Neither Skrove or Stoll testified that an exchange occurred.
Skrove and Stoll followed the car, in which appellant was a front seat passenger, and they each testified that they were awaiting assistance before attempting to stop the vehicle. While the officers were following the vehicle, they observed two traffic infractions. First, they noticed that the driver of the vehicle, Rozier, failed to use a turn signal. Then, they observed Rozier make a sudden lane change which required a trailing vehicle to brake suddenly.
After Rozier's vehicle had been followed for 5 miles or so, back-up arrived and Rozier was stopped. The officers talked to Rozier outside his vehicle, and after a license check, Rozier agreed to a search of his person; nothing was found. According to the officers, Rozier thereafter consented to a search of his car. Appellant was removed from the vehicle and was asked whether he was in possession of a weapon or narcotics. Appellant denied possession, and then, according to Skrove and Stoll, consented to a search of his person, which revealed crack cocaine and a cocaine pipe. Appellant was arrested at that point.
Appellant was charged with possession of cocaine and possession of paraphernalia. Appellant moved to suppress the seized evidence, arguing that police lacked a founded suspicion of criminal activity based upon what they observed on North Macomb Street. Without explanation, the lower court summarily denied the motion to suppress. Appellant thereafter entered a nolo plea on the possession of cocaine charge, reserving the right to appeal the denial of his motion to suppress. The state dropped the possession of paraphernalia charge.
We believe the lower court erred in denying the motion to suppress. Skrove and Stoll explicitly testified that before any traffic infractions were observed, they had decided to stop the vehicle in which appellant was riding. See, U.S. v. Smith, 799 F.2d 704 (11th Cir.1986) (where there is objective evidence police had no interest in investigating possible drunk driving charge, stop on this ground was pretextual); Porcher v. State, 538 So.2d 1278 (Fla. 5th DCA 1989) (stop of vehicle for allegedly following too closely by one officer, at request of officer involved in drug investigation, held pretextual, where real reason for stop was to check for possession of drugs); Monroe v. State, 543 So.2d 298 (Fla. 2d DCA 1989) (stop was unlawful where state failed to carry burden of proving that reasonable officer would have made stop for a bald tire, absent another invalid purpose). Skrove testified that he would have stopped Rozier's vehicle for such infractions when he was a patrol officer. The evidence did not establish, however, that the officers, while engaged in their duties as narcotics investigators, would have stopped a car for these minor traffic infractions. The traffic infractions, therefore, do not constitute the focal point in determining whether the police possessed a founded suspicion to justify a stop of the vehicle.[1]
We recognize that this court has not charted a clear course on the topic of founded suspicion. Nevertheless, after examining *155 the spectrum of fact patterns contained in the case law addressing this question, we find that the events observed on North Macomb Street did not afford the police a founded suspicion of criminal activity to justify the stop. Whether a vehicle stop is lawful depends upon whether it is predicated on a founded or reasonable suspicion that requires further investigation to determine whether the occupants of the vehicle have committed, are committing, or are about to commit a crime. McCloud v. State, 491 So.2d 1164 (Fla. 2d DCA 1986); Adams v. State, 523 So.2d 190 (Fla. 1st DCA 1988). In order to justify a stop based on founded suspicion, the officer must articulate in particular and objective terms his reasonable suspicion of criminal activity; a bare suspicion of criminal activity is insufficient. Daniels v. State, 543 So.2d 363, 365 (Fla. 1st DCA 1989).
As above noted, Skrove and Stoll observed appellant and the other persons in an area known as "Frenchtown," which is known to be a high crime area. The officers did not see an exchange of any object between the persons huddled together. Rather, Skrove and Stoll testified that they merely observed one of the four appear to display the contents of his palm to the others. In Gipson v. State, 537 So.2d 1080 (Fla. 1st DCA 1989), this court determined that the police lacked a founded suspicion when, while patrolling an area known for drug transactions in search of a robbery suspect, they observed three persons huddled behind a bar which had recently been the site of a murder. As police approached on foot, the three fled. This court noted that the defendant in Gipson was not the robbery suspect being sought and that police did not observe the exchange of drugs or money. 537 So.2d at 1082.
Similarly, in Daniels v. State, supra, this court determined that police lacked a founded suspicion based upon their observation of a man, in a group of 20 to 30 people gathered outside a Frenchtown tavern, who departed suddenly from the crowd into the tavern upon the sight of an unmarked police car. The detaining officer found the defendant looking out the back door of the tavern with his hands in his pockets; the defendant refused to comply with the officer's request to remove his hands from his pockets, and he was thereafter arrested.
In Dames v. State, 566 So.2d 51 (Fla. 1st DCA 1990), this court also reversed the denial of a motion to suppress. The detaining officer in Dames testified that while patrolling "a well-known drug area" he observed a man, the defendant, leaning into the passenger window of a car. When the driver of the car spotted the officer, he abruptly departed leaving the defendant in the middle of the street "looking puzzled." 566 So.2d at 52. When the officer drove up to the defendant, the defendant swiftly walked away, but he was ordered to stop. As he stopped and turned towards the officer, a bag of cocaine fell to the ground. Again, the officer did not observe the exchange of drugs or money.
We are not suggesting that an exchange of money or contraband must be observed before a permissible stop may be made. Rather, the lack of such a transaction is cited as demonstrative of the paucity of factual circumstances objectively demonstrating past, present or impending future criminal activity in the case before us. While it is true that the police in the instant appeal, as was the case in some of the decisions cited above,[2] have testified that the conduct they observed was consistent with drug transactions, a stop nevertheless must be based "on objective facts." Adams, 523 So.2d at 192; McClain v. State, 408 So.2d 721 (Fla. 1st DCA), rev. dismissed, 415 So.2d 1361 (Fla. 1982).
In Thornton v. State, 559 So.2d 438 (Fla. 1st DCA 1990), this court affirmed the denial of a motion to suppress. In that case, a police officer was patrolling "a known drug area" in a marked vehicle when he observed two men together, one man peering into the cupped hands of the other, the defendant. When the police car was spotted by the defendant, he "made a quick move," turned his back to the officer, and moved both hands to his groin area. 559 So.2d at 439. This court described the movement of the defendant to his groin as "a furtive, suspicious and potentially dangerous act." Id. Concerned *156 that the defendant in Thornton was secreting a weapon, the officer exited his vehicle and requested that the defendant remove his hands. When the defendant failed to do so, the officer drew his weapon and repeated the instruction. As the defendant began to comply, he dropped a small bag of cocaine to the ground.
In the instant case, by contrast, neither appellant nor his companions were observed to make a furtive, suspicious or potentially dangerous movement, nor were they observed to be engaged in anything other than seemingly innocent behavior, albeit in a high crime area. It is well-established that such behavior, which may be suspicious but not demonstrably or conceivably criminal, is not sufficient to establish a founded suspicion, even in a high crime area. See, Shackelford v. State, 579 So.2d 306 (Fla. 2d DCA 1991) (observation of defendant leaning into window of car in area known for street level drug sales, coupled with detaining officer's participation in drug sales where defendant was present did not create founded suspicion); State v. Isaacs, 578 So.2d 523 (Fla. 4th DCA 1991) (observation of defendant circle his vehicle on a street in high crime area, stop and talk to a man unknown to police on a bicycle, and later rejoin the bicyclist in a nearby cemetery which was without streetlights not founded suspicion); Peabody v. State, 556 So.2d 826 (Fla. 2d DCA 1990) (approaching a car stopped in a crime area whose driver has his hand extended, palm up, did not create founded suspicion); Bastien v. State, 522 So.2d 550 (Fla. 5th DCA 1988) (defendant's attempted flight when SWAT team converged on bar in high crime area with arrest warrants for others did not create founded suspicion); State v. Hoover, 520 So.2d 696 (Fla. 4th DCA 1988) (in a high crime area, white driver seen talking to a black pedestrian, who walked quickly away into woods did not establish founded suspicion); Antela v. State, 514 So.2d 423 (Fla. 3d DCA 1987) (defendant leaving an oft-robbed convenience store upon sight of police does not create founded suspicion); Walker v. State, 514 So.2d 1149 (Fla. 2d DCA 1987) (a quick movement by defendant, as if to conceal something, upon sight of police in a high crime area did not give rise to founded suspicion); Cobb v. State, 511 So.2d 698 (Fla. 3d DCA 1987) (defendant running upon sight of police in high crime area did not create founded suspicion), and Kearse v. State, 384 So.2d 272 (Fla. 4th DCA 1980) (defendant leaning into a car in a high crime area and then walking away briskly did not establish founded suspicion).[3]
Officers Skrove and Stoll testified that after appellant was removed from Rozier's vehicle, he consented to a search of his person. When an initial detention is invalid, all that flows from it is also illegal. Ottney v. State, 571 So.2d 20 (Fla. 2d DCA 1990). Even consent given after an illegal detention is presumed involuntary. Norman v. State, 379 So.2d 643 (Fla. 1980); Mitchell v. State, 558 So.2d 72 (Fla. 2d DCA 1990). Such so-called consent will be found voluntary if there is "clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of illegal action." Norman, 379 So.2d at 647. The state does not satisfy its burden simply by showing mere submission to a claim of lawful authority. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed. 229 (1983); Reynolds v. State, 592 So.2d 1082 (Fla. 1992). There is nothing in the record before us which amounts to clear and convincing proof of a break in the chain of illegality. There was no testimony that after being stopped by back-up, appellant and his companions were advised of their right to decline a search. In short, we find the state failed to meet its burden below.
In concluding that a reversal is required in the case at bar, we are mindful that determinations of a trial court in considering a motion to suppress come to an appellate court clothed with a presumption of correctness. State v. Pye, 551 So.2d 1237, 1239 (Fla. 1st DCA 1989). We have already noted, *157 however, that the trial court made no findings in connection with its denial of the instant motion to suppress. We are also mindful that a reviewing court is to interpret the evidence and reasonable inferences therefrom in a manner most favorable to sustaining a lower court's ruling on a motion to suppress. Id. Nevertheless, because the state failed to establish a factual basis demonstrating more than a bare suspicion of criminal activity, the motion to suppress should have been granted. State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978).
Accordingly, appellant's judgment of conviction is REVERSED.
SMITH, BARFIELD and MICKLE, JJ., concur.
NOTES
[1] Because the officers had already decided to stop Rozier's car, but had not done so by the time the traffic infractions occurred because back-up had not yet arrived, it is clear that the stop was not subjectively pretextual. As explained in Kehoe v. State, 521 So.2d 1094, 1096 (Fla. 1988), a pretextual stop occurs "[w]hen police realize that they lack a founded suspicion, they sometimes attempt to justify a stop on some obscure traffic violation." Skrove and Stoll were not looking for an excuse, or a pretext, to stop Rozier's vehicle. Rather, they had already made the decision to stop based on what was observed on Macomb Street, and they were simply awaiting assistance. Nevertheless, the state's attempt to justify the stop based upon the traffic infractions must be condemned as pretextual; the analysis employed in determining whether a stop is pretextual is not based on a police officer's subjective intent, but upon the objective test of whether a reasonable officer would have made the stop based solely on the traffic offenses, absent another invalid purpose. Monroe v. State, 543 So.2d 298 (Fla. 5th DCA 1989). Here, neither officer issued a traffic citation for the improper lane change, and Rozier's car was not stopped until it had traveled 5 miles or more from the place where the lane change occurred.
[2] See, for example, Dames v. State, 566 So.2d at 52; Daniels v. State, 543 So.2d at 364.
[3] It should be stressed, however, that location remains a relevant consideration, which when coupled with other factors may, in their totality, create a founded suspicion of criminal activity. Thornton, supra.