680 So.2d 1041 (1996)
STATE of Florida, Appellant,
v.
Barbara Gayle HOLLAND, Appellee.
No. 94-856.
District Court of Appeal of Florida, First District.
August 23, 1996.
*1042 Robert A. Butterworth, Attorney General, and Thomas Crapps, Assistant Attorney General, Department of Legal Affairs, Tallahassee, for Appellant.
Nancy A. Daniels, Public Defender, and David P. Gauldin, Assistant Public Defender, Tallahassee, Attorney for Appellee.
BOOTH, Judge.
This cause is before us on appeal from an order granting Appellee Holland's motion to suppress a knife with cocaine residue on its blade, which police seized from a vehicle in which Holland was a passenger. The trial court ruled that the stop of the vehicle was pretextual under Kehoe v. State, 521 So.2d 1094 (Fla.1988). We reverse and remand.
During the pendency of this appeal, the United States Supreme Court rendered its decision in Whren v. United States, ___ U.S. ___, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), applying an objective test to uphold a search and seizure under similar facts. In Whren, the Court specifically rejected the reasonable officer test that the Florida Supreme Court recently applied in State v. Daniel, 665 So.2d 1040, 1046 (Fla.1995). Reversal of the order below is compelled under the objective test set forth in Whren, supra.
Even applying the reasonable officer test set forth in Daniel, we would reverse the suppression ruling below. In the case before us, it is undisputed that immediately prior to the stop, the subject vehicle ran a stop sign.[1] Running a stop sign is a direct violation of Florida's traffic laws,[2] and is a valid reason for police to stop a vehicle. See State v. Renda, 553 So.2d 373, 374-75 (Fla. 2d DCA 1989)(reversing order granting defendant's motion to suppress cocaine, finding under Kehoe that "the cocaine was found as part of a legitimate traffic stop" for running a stop sign).[3] As recently held in a similar context in State v. Everett, 671 So.2d 161 (Fla. 2d DCA 1996):
[T]he Florida Supreme Court recently opined that once the state establishes that a traffic stop was legally authorized, then *1043 any legitimate doubt whether the state has met its burden that the stop was not pretextual should be resolved in favor of the state. State v. Daniel, 665 So.2d 1040 (Fla.1995). In this instance, the state presented unrefuted testimony indicating [the defendant] made a right hand turn without signalling. [The defendant's] action was a violation of section 316.155, Florida Statutes (1993). Consistent with Daniel, [the defendant's] action gave the officer the right to initiate a traffic stop.
It is also undisputed in the present case that, once stopped, the driver consented to the search of the subject vehicle. See State v. Cromatie, 668 So.2d 1075, 1077 (Fla. 2d DCA 1996) (holding in context of vehicle that had run a stop sign and had an improperly operating left rear brake light that "[d]uring a valid traffic stop, ... there is no reason a law enforcement officer cannot ask for consent to search."); see also State v. Lagree, 595 So.2d 1029, 1031 (Fla. 1st DCA)("A mere passenger normally does not have standing to contest the search of a car in which he is riding."), rev. denied, 601 So.2d 553 (Fla.1992).
Finally, it is also undisputed that the police involved in this case, members of a specialized street crimes unit, normally stop vehicles for running stop signs and other traffic infractions, and request the drivers' consent to search the vehicles.[4] As held by the Florida Supreme Court in Daniel, 665 So.2d at 1046, "a stop is permissible if effected by specialized officers properly acting within the scope of their usual duties and practices...."
It is important to note that the trial court in the present case did not reject the officers' testimony pertaining to the usual police practice; rather, the trial court found the practice itself to be objectionable because the trial court believed that the officers' primary motive in stopping for traffic violations was to search vehicles for drugs.
The "primary motivation" rationale employed by the trial court here has already been rejected under strikingly similar facts in State v. Renda, 553 So.2d 373 (Fla. 2d DCA 1989). In Renda, as in the present case, officers of "a special investigations unit targeted primarily at drug-related crimes" noticed the suspicious activity of a certain vehicle in a neighborhood known for high levels of crime and drug abuse, and thereafter stopped that vehicle when it "proceeded through a stop sign at approximately five miles per hour without stopping." 553 So.2d at 374. The trial court in Renda suppressed cocaine seized as a result of the stop, holding that it was "not believable that the primary reason for stopping the Defendant was his traffic violation.... The stop of the vehicle would not have occurred absent the suspicion of drug activity." Id. at 374-75. The appellate court reversed, holding (Id. at 375):
[The trial court's] interpretation of the Kehoe standard erroneously turns on the officers' primary motive, not on whether a reasonable officer would have made the stop.
This court has already rejected such an approach. In Moreland v. State, 552 So.2d 937 (Fla. 2d DCA 1989), this court said:
We do not agree with the defendant's argument that the stop was an invalid pretextual stop. While there was evidence indicating invalid subjective pretextual motives of the officers, there was also evidence of valid objective bases for the stop.... Each officer testified that he would have stopped any driver under the circumstances.

Moreland, 552 So.2d at 938[, rev. denied, 562 So.2d 346 (Fla.1990)]. In Moreland, the defendant was clocked at sixty-two miles per hour in a fifty-five miles per hour zone and was weaving on the road. Here, *1044 the defendant travelled through a stop sign. In both cases officers testified that they would issue citations for such violations.
Likewise, as held under similar facts in State v. Velez, 649 So.2d 310, 311 (Fla. 3d DCA 1995):
[I]t does not matter that the officer in questionwho in this case was a narcotics investigatormight or even, as the trial court held, would have detained the occupants [of a vehicle that had run a red light and travelled 60 miles per hour in a 30 mile-per-hour zone] if no infraction had taken place at all. Although State v. Irvin, 483 So.2d 461[, 462-63] (Fla. 5th DCA 1986), review denied, 491 So.2d 279 (Fla. 1986) was decided pre-Kehoe, it is based on Kehoe principles and is almost directly on point:
[T]hat the police may have wished or even intended to detain a suspect for another reason does not invalidate an apprehension which follows the commission of a traffic or other offense which would subject any member of the public to a similar detention. Applying these principles, we reverse the order under review which, on the finding that the officers would have (unjustifiably) detained the appellant driver for questioning on drug charges in any event, suppressed contraband found in the car after it was stopped for going 70 miles per hour in a 50-mile-per-hour zone. (footnotes omitted) (citations omitted)
* * * * *
Regardless of what they would have done, the police could validly have stopped the defendant only if he committed an illegal act. On the other hand, since Irvin in fact did so, he may not be excused from that misconduct merely because the officer might have arrested him anyway. [(Emphasis original, footnote and citations omitted).[5]]
In short, under either the reasonable officer test set forth in Daniel, supra, or the objective test of Whren, supra, we reverse the suppression order under review and remand for further proceedings. We certify the following question of great public importance to the Florida Supreme Court:
WHETHER WHREN V. UNITED STATES, ___ U.S. ___, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), OVERRULES STATE V. DANIEL, 665 So.2d 1040, 1046 (Fla.1995), AND WHETHER THE PRESENT SUPPRESSION ORDER SHOULD BE REVERSED.[[6]]
*1045 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS; QUESTION CERTIFIED.
LAWRENCE, J., concurs, and VAN NORTWICK, J., concurs with written opinion.
VAN NORTWICK, Judge, concurring.
I concur because I believe Whren v. United States, ___ U.S. ___, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), has overruled State v. Daniel, 665 So.2d 1040 (Fla.1995), and compels reversal in the instant case. I write solely because I disagree with the majority's conclusion, although somewhat hypothetical in view of Whren, that reversal would be required here even under the so-called "reasonable officer test" applied in Daniel.
The trial court below in effect applied the Daniel reasonable officer test, finding that the specialized narcotics officers who made the traffic infraction stop would not have effected the stop under their usual police practices absent a motive to search for illegal drugs. Because the trial court's determination is supported by competent substantial evidence, as I read Daniel, under the reasonable officer test we would have been obligated to uphold the instant suppression order.
In Daniel, the court described the reasonable officer test as "asking whether the stopif occasioned by a minor infraction was of a kind falling within the usual practices of the same or similar agencies." Id. at 1041-1042. The test involves an objective "individualized inquiry ... [asking] whether the usual police practice would be to effect a stop when confronted with a particular kind of minor infraction. In sum, would the officer have effected the stop absent any improper motive." Id. at 1043 (emphasis theirs). Thus, under Daniel, the reasonable officer test means that:
[A] stop for a minor infraction cannot be deemed pretextual on appeal where (1) the officer was acting with the proper scope of lawful authority, and (2) the record below contains competent substantial evidence that the stop was not objectively pretextual without regard to any subjective intentions, as demonstrated by the fact it was a usual police practice, and (3) the trial court has so found.
Id. at 1044 (footnote omitted).
The Daniel court expressly rejected both the so-called "subjective test," which "attempts to inquire into the actual subjective reasons why the officer made the stop," id. at 1041, and the so-called "objective test," now adopted by the United States Supreme Court in Whren. Whren, ___ U.S. at ___, 116 S.Ct. at 1772 ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). Daniel described the objective test as a "could arrest" approach asking "only if the officer was objectively authorized and legally permitted to make the stop in question without regard to any pretextual motive." Daniel, 665 So.2d at 1041. The Daniel court rejected the objective test because that test "would authorize stops for the subject infractions however unrelated those infractions may be to the true motive for the stop," id. at 1042; see also, Kehoe v. State, 521 So.2d 1094, 1097 (Fla.1988), and it "clearly fails to address the problems that sometimes will arise with specialized officers." Daniel, 665 So.2d at 1046, n. 6.
Also of assistance to an analysis of the application of the reasonable officer test to the instant case is the Daniel court's express recognition of Monroe v. State, 543 So.2d 298 (Fla. 5th DCA 1989) and Hills v. State, 629 So.2d 152 (Fla. 1st DCA 1993) as in accord with Daniel's reasonable officer test. Daniel, 665 So.2d at 1045. In Monroe, the Fifth District addressed a situation where, as here, an officer on narcotics patrol stopped the defendant for a minor traffic infraction (in Monroe, because the defendant's vehicle had a "bald tire"). In reversing the denial of a suppression motion, the Monroe court ruled that the state had failed to carry its burden of demonstrating that "a reasonable officer on drug patrol would have made a traffic stop for a bald tire, absent another invalid purpose, under the facts and circumstances present here." Monroe, 543 So.2d at 299.
In Hills, this court also reversed the denial of a motion to suppress, finding an impermissible pretext where, following the stop, the *1046 officers had failed to cite the defendant for the minor traffic offenses in question and had followed the defendant's vehicle for five miles or more after the infraction occurred. Hills, 629 So.2d at 154. The Hills court emphasized the importance to its analysis of the usual roles and practices of specialized officers, stating:
[The officer] testified that he would have stopped [defendant's] vehicle for such infractions when he was a patrol officer. The evidence did not establish, however, that the officers, while engaged in their duties as narcotics investigators, would have stopped a car for these minor traffic infractions.
Id.
Here, the trial court granted the suppression motion because it found that the specialized police officers, narcotics officers in a street crimes unit operating in an unmarked car, under their usual police practices would not have made the instant stop absent an invalid motive to search for drugs. The trial court in effect found that the pretext of the stop was, in the language of Daniel, "transparently obvious." Daniel, 665 So.2d at 1043. Even though a police officer testified below that he "always" stopped people who run stop signs, the trial court in effect rejected that testimony as lacking credibility. The trial court in the instant case based its findings on the usual practice of the specialist narcotics officers (as in Monroe and Hills), the lack of credible evidence to support a finding that narcotics officers would under their usual practice make a traffic stop for running a stop sign absent an invalid motive (as in Monroe and Hills), the failure of the officers to issue a traffic citation after the stop (as in Hills), and the court's observation of the demeanor and credibility of the officers who testified at the suppression hearing. At the time it granted the suppression motion, the trial court stated its findings and reasons on the record, in part as follows:
THE COURT: ... [T]here's no question that this street crime organization is out there for drug purposes.
* * * * * *
They admit that. In other transcripts where we've asked them a lot of questions they admit that that's what they are out there for. They stop people for minor traffic offenses for the purpose of searching. That's what they do it for.
* * * * * *
I just don't think there's any question, there's no question in my mind as to how they have previously testified as to how they operate that what they are doing is using minor traffic stops for the sole purpose of searching people. In this particular case they didn't even write the ticket.
* * * * * *
Well, I think that's all a fraud, personally. And I think they sit here and testifythey got smirks on their faces when they are testifying. He did himself. This officer did himself when he was asked questions about it. They know what they are doing. You know what they are doing. I know what they are doing....
I find the instant facts and circumstances to be very similar to the facts and circumstances supporting suppression in Monroe and Hills. Here, however, unlike Monroe and Hills, we are reviewing the trial court's determination after an evidentiary hearing that the stop was pretextual. I conclude that in granting the suppression motion the trial court correctly applied the Daniel reasonable officer test to the facts. Although the facts in the record may also have supported a different result, as the Daniel court noted, "the question is for the trier of fact where the record adequately supports both theories of the case." Daniel, 665 So.2d at 1047. Because a trial court's ruling on a suppression motion is presumptively correct, J.L.K. v. State, 474 So.2d 390, 392 (Fla. 1st DCA 1985), and competent, substantial evidence supports the findings of the trial court below, Daniel, 665 So.2d at 1046-1047; Thomas v. State, 583 So.2d 336, 338 (Fla. 5th DCA 1991), I would have affirmed the instant case under Daniel.
NOTES
[1] The vehicle ran the stop sign immediately after being involved in an apparent drug transaction. We note, without belaboring the facts or deciding the issue, that the apparent drug transaction may have in and of itself provided a legitimate basis for the stop, regardless of the subsequent running of the stop sign. See Brandin v. State, 669 So.2d 280, 282 (Fla. 1st DCA 1996); State v. Renda, 553 So.2d 373, 374 (Fla. 2d DCA 1989).
[2] See §§ 316.072(2) & 316.123(2)(a), Fla.Stat. (1993) (requiring drivers to stop at intersections marked with a stop sign, and rendering the failure to do so unlawful); see also State v. Carmody, 553 So.2d 1366, 1367 (Fla. 5th DCA 1989) (holding that running a stop sign is an offense "for which a law enforcement officer is authorized to make a warrantless arrest, when the offense is committed in the officer's presence.").
[3] See also R.H. v. State, 671 So.2d 871 (Fla. 3d DCA 1996); State v. Velez, 649 So.2d 310 (Fla. 3d DCA 1995); State v. Banfield, 614 So.2d 551, 552-53 (Fla. 2d DCA), rev. denied, 626 So.2d 203 (Fla.1993); State v. Rodriguez, 542 So.2d 454, 455-56 (Fla. 3d DCA 1989). Pre-Kehoe cases likewise hold that running a stop sign or stop light is a valid reason for police to stop a vehicle. See Ferrara v. State, 101 So.2d 797, 798 (Fla. 1958); McClendon v. State, 440 So.2d 52, 53-54 (Fla. 1st DCA 1983); Crummie v. State, 367 So.2d 1106, 1107 (Fla. 3d DCA 1979). Nothing in Kehoe rendered the running of a stop sign or stop light a trivial traffic offense. Indeed, such an offense is a moving violation that potentially threatens life and limb.
[4] This "usual police practice" testimony from the officers at issue distinguishes the present case from Hills v. State, 629 So.2d 152 (Fla. 1st DCA 1993), rev. denied, 639 So.2d 981 (Fla.1994), and Monroe v. State, 543 So.2d 298 (Fla. 5th DCA 1989). In neither of those cases did the narcotics officers testify that they usually stopped vehicles for failing to use a turn signal and making a sudden lane change (Hills) or for having a bald tire (Monroe). Moreover, unlike the present case, both Hills and Monroe involved narcotics officers following a specific suspect vehicle, just "waiting for an opportunity to make a stop" based on a traffic infraction. Monroe, 543 So.2d at 299.
[5] See also State v. Barrio, 619 So.2d 389 (Fla. 1st DCA 1993) (reversing order granting defendant's suppression motion, holding that stop of vehicle travelling eight miles per hour over the speed limit was not pretextual, even where officer had drug dog, only issued a few tickets in previous months, and conceded that his purpose in being at the place and time in question with a drug-sniffing dog in his car was to locate drugs: "[T]he stop for speeding was not rendered invalid because the officer was also seeking to apprehend drug carriers."); State v. McNeal, 666 So.2d 229, 230-31 (Fla. 2d DCA 1995)(reversing order granting defendant's motion to suppress drugs and drug paraphernalia where "Street Narcotics Task Force" officer testified that underlying stop of vehicle with suspect tag and inoperable tag light was consistent with his uniform practice of stopping such vehicles), rev. denied, 673 So.2d 29 (Fla.1996); Springle v. State, 613 So.2d 65, 67 (Fla. 4th DCA) (holding that stop of vehicle for travelling eight miles per hour over the speed limit was not improper, even though officers had drug dog and admitted that their main purpose was to, inter alia, search the vehicle and pat down the occupants: "[U]nder Kehoe, a non-pretextual stop is not rendered invalid because the officers in reality have another purpose in mind."), rev. dismissed, 626 So.2d 208 (Fla.1993); State v. Russell, 557 So.2d 666, 667 (Fla. 2d DCA 1990) (reversing order granting defendant's motion to suppress marijuana where underlying stop for inoperable tag light was made by officers with drug dog, who were admittedly patrolling the interstate for the purpose of narcotics interdiction through the use of probable cause traffic stops: "[A]lthough the officers were primarily concerned with narcotics interdiction, there was evidence of a valid basis for the stop. The officers noticed the traffic violation and had not been looking for a reason to stop this particular person or vehicle.").
[6] See Art. I, § 12, Fla. Const. ("This right [to be free from unreasonable searches and seizures] shall be construed in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court.").