696 So.2d 757 (1997)
Barbara Gayle HOLLAND, Petitioner,
v.
STATE of Florida, Respondent.
No. 88995.
Supreme Court of Florida.
July 3, 1997.
Nancy A. Daniels, Public Defender and David P. Gauldin, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Petitioner.
Robert A. Butterworth, Attorney General; James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Stephen R. White, Assistant Attorney General, Tallahassee, for Respondent.
HARDING, Justice.
We have for review State v. Holland, 680 So.2d 1041, 1044 (Fla. 1st DCA 1996), in which the First District Court of Appeal *758 certified the following question to be of great public importance:
WHETHER WHREN V. UNITED STATES, ___ U.S. ___, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), OVERRULES STATE V. DANIEL, 665 So.2d 1040, 1046 (Fla.1995), AND WHETHER THE PRESENT SUPPRESSION ORDER SHOULD BE REVERSED.
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Barbara Gayle Holland was arrested in Escambia County on May 25, 1993, for possession of cocaine after the Isuzu truck in which she was a passenger was stopped for a traffic violation. Prior to the stop, Officer Jimmy James had observed a black male run up to the truck in the Moreno Courts complex and exchange something with the white male driver, just as the black male had done previously with two other vehicles. James stopped the truck for running a stop sign when exiting the complex and received permission to search the truck from the male driver. An unconcealed knife on the truck seat was seized and found to have cocaine residue on the blade. The trial court found the vehicle stop to be pretextual and granted Holland's motion to suppress the knife seized. On appeal, the district court noted that the United States Supreme Court had recently decided Whren v. United States, ___ U.S. ___, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), which applied a different test from the one established by this Court's decision in State v. Daniel, 665 So.2d 1040 (Fla.1995), to determine the reasonableness of a stop under search and seizure law. State v. Holland, 680 So.2d 1041, 1042 (Fla. 1st DCA 1996). The district court concluded that under either test the suppression order should be reversed. Id.
The first issue in this case is whether, after the United States Supreme Court's decision in Whren, Florida courts should still apply the "reasonable officer test" set out in Daniel to determine whether a traffic stop was pretextual and therefore impermissible.
In Daniel the defendant, who was in an area known for drug peddling, was stopped for driving a vehicle with a cracked windshield and a stuck windshield wiper. The defendant was arrested for failure to produce a driver's license and, during a pat-down, a crack pipe and cocaine were found in his clothing. 665 So.2d at 1041. To determine whether the traffic stop was reasonable and thus constitutional, in the absence of United States Supreme Court precedent, this Court examined the split of authority on the issue and applied the reasonable officer test. Id. at 1041-44. We concluded that a stop for a minor infraction could not be deemed pretextual where "the officer was acting within the proper scope of lawful authority" and the record contained "competent substantial evidence that the stop was not objectively pretextual without regard to any subjective intentions." Id. at 1044. We further found that evidence that the stop was not "objectively pretextual" was properly demonstrated where the stop "was of a kind falling within the usual practices of the same or similar agencies." Id. at 1042.
While Holland's appeal in this case was pending in the First District Court, the United States Supreme Court decided Whren which directly addresses the issue posed by Daniel. In Whren, vice squad officers in an unmarked car were patrolling a "high drug area" when their suspicions were aroused by a truck which stopped at a stop sign for more than twenty seconds while the driver looked down into the lap of the passenger. When the police made a U-turn back toward the truck, the vehicle turned without signalling and sped away at an "unreasonable" speed. The officers followed and pulled up alongside the truck at a red light where one officer approached the truck and observed what appeared to be bags of crack cocaine in Whren's hands. Whren was arrested for violation of federal drug laws and he subsequently challenged the legality of the stop and the seizure, claiming that the officer's ground for approaching the vehicle was pretextual. ___ U.S. at ___, 116 S.Ct. at 1772.
In Whren, the Supreme Court held that the constitutional reasonableness of a traffic stop is not dependent on the motivations of the individual officers involved and applied a simple objective test, based on the common law rule that probable cause justifies a search and seizure. at ___,___, 116 S.Ct. *759 at 1774, 1777. The Whren Court found that the officers had probable cause to believe that the defendants had violated the traffic code which rendered the stop reasonable under the Fourth Amendment and thus all evidence discovered thereby was admissible. Id. at ___, ___, 116 S.Ct. at 1777. The Court characterized the reasonable officer test as an attempt "to reach subjective intent through ostensibly objective means" and noted that the test was too difficult in application because the determination would rely on the "collective consciousness of law enforcement." Id. at ___, 116 S.Ct. at 1775. The Whren Court rejected the reasonable officer test in favor of a strict objective test which asks only whether any probable cause for the stop existed.
Whether the reasonable officer test of Daniel is overruled by Whren rests on a determination of how closely Florida courts must conform to United States Supreme Court interpretations of search and seizure guarantees. Like the United States Constitution, the Florida Constitution, in article I, section 12, guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." As amended in 1982 section 12 also provides that "[t]his right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." (Emphasis added.)
When we previously examined the limits of this amendment to section 12, we found that the conformity clause "brings this state's search and seizure laws into conformity with all decisions of the United States Supreme Court rendered before and subsequent to the adoption of that amendment." Bernie v. State, 524 So.2d 988, 992 (Fla. 1988). We subsequently determined that the conformity clause not only binds the Florida courts to follow the United States Supreme Court's interpretation of the Fourth Amendment to the United States Constitution but also to "provide no greater protection than those interpretations." Perez v. State, 620 So.2d 1256, 1258 (Fla.1993). Even where a United States Supreme Court decision apparently limits Fourth Amendment protection, the decision establishes legal precedent for Florida, as "we are bound by any apposite holdings of the United States Supreme Court on Fourth Amendment issues." Daniel, 665 So.2d at 1041. Accordingly, we conclude that the use of the reasonable officer test as set out in Daniel is overruled by the objective test of Whren.
In determining whether the suppression order in the instant case should be reversed, we are constrained to review the record under the objective test of Whren. When applying the objective test, generally the only determination to be made is whether probable cause existed for the stop in question.[1] In the present case, the officers stopped the vehicle in which Holland was a passenger because the vehicle failed to stop at a stop sign, a direct violation of Florida's traffic law. Under similar facts in Whren, the Supreme Court concluded that a violation of traffic law provided sufficient probable cause to make the subsequent search and seizure reasonable. ___ U.S. at ___ _ ___, 116 S.Ct. at 1772-75. We agree with the First District Court's determination that probable cause for the stop was present under these facts.
The only other question presented is whether any exception to the objective test of Whren might apply under the facts at hand to require that the state's interest be balanced against the individual's interest as part of the reasonableness determination. In Whren, the United States Supreme Court noted that in principle every Fourth Amendment case "turns upon a `reasonableness' determination, [and] involves a balancing of all relevant factors." Id. at ___, 116 S.Ct. at 1776. However, the Whren Court also noted that only a few rare exceptions would fall outside the general rule that a stop based on probable cause is reasonable. A balancing test of the interests involved is required only where the search or seizure was conducted in a manner unusually harmful to the *760 person's privacy interests or physical interests. Id.
In Whren, the Supreme Court gave four specific examples of rare exceptions which would fall outside the general rule that probable cause makes a stop reasonable: seizure by deadly force, physical penetration of the body, entry into a home without a warrant, or unannounced entry into a home.[2]Id. In addition, the Whren Court noted that a "traffic stop out-of-uniform does not remotely qualify as such an extreme practice." Id. at ___, 116 S.Ct. at 1771. Consequently, the mere fact that the stop in the present case was made by officers of a street crimes unit who were undercover and in an unmarked car does not require that the state's interests be balanced against the individual's interests to determine the reasonableness of the stop.
Holland contends that the stop in this case was not simply a "traffic stop out of uniform," but a stop that unreasonably subjected the vehicle occupants to danger and therefore is a dangerous exception that falls outside the general rule of Whren. The stop occurred at nine o'clock at night in an area of town which might be considered dangerous. Holland points out that during cross-examination the arresting officer himself agreed that a person would be stupid to stop for an unmarked car with a blue light approaching from behind at night in that particular part of town. While we recognize the officer's statement as a compelling indication that it could be unsafe to stop for an unmarked car with a blue light when that car might not be a police vehicle, we also note that the officer's statement is a subjective opinion. To allow the subjective opinion of one officer to create a rare exception would be to allow the exceptions to take over the rule of Whren. In establishing the objective test as the proper test to be applied in a reasonableness analysis, the Whren Court made it clear that subjective viewpoints no longer factor into the analysis.
While we do not find the list of exceptions to the rule of Whren to be exhaustive, we note that the exceptions listed are extreme instances of harm to physical or privacy interests. Under the principle of ejusdem generis, only other instances of harm to the same extreme could be held to be further exceptions to the general rule. Where, as here, the vehicle was an unmarked police car and police made the actual stop, even in a questionable part of town, the vehicle occupants would be in no danger. We conclude that the mere possibility that a criminal might attempt to use a blue light in a similar manner to stop unwary travelers does not place the vehicle occupants in sufficient danger from a valid night stop by police to cause the stop to rise to a level of harm to physical interests sufficient to fall within the rare exceptions to Whren.
For the reasons discussed above, we answer both the first and second part of the certified question in the affirmative and approve the decision below to the extent that it concludes that reversal of the suppression order was compelled under the objective test set forth in Whren. We also recede from Daniel as the objective test is now the appropriate test to apply in determining the reasonableness of a stop under Florida's search and seizure law.
It is so ordered.
OVERTON, GRIMES and WELLS, JJ., concur.
SHAW and ANSTEAD, JJ., concur in result only.
KOGAN, C.J., dissents.
NOTES
[1] The legality of the actual vehicle search is not at issue in this case as it is uncontested that the officers received permission to search the vehicle.
[2] The Whren court cited the following cases to support each of the examples: Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (seizure by means of deadly force); Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) (unannounced entry into home); Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (entry into a home without a warrant); and Winston v. Lee, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (physical penetration of the body).