# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-3742
Lower Tribunal No. 2022-CF-009143-O

_____

STATE OF FLORIDA,

Appellant,

v.

MARLON MANUEL DIAZ,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Gail A. Adams, Judge.

September 13, 2024

LAMBERT, B.D., Associate Judge.

The State of Florida appeals the trial court's order granting Marlon Manuel Diaz's motion to suppress fentanyl, methamphetamine, and a concealed firearm confiscated from his vehicle, together with statements that he made to law enforcement,[1] following a traffic stop. We have jurisdiction under Florida Rule of Appellate Procedure 9.140(c)(1)(B) and, for the following reasons, reverse the order.

---

[1] Following the warnings given under *Miranda v. Arizona*, 384 U.S. 436 (1966), Diaz explained to the deputies that, among other things, he was recently

Diaz is charged with trafficking in four grams or more of fentanyl, possession of methamphetamine, and carrying a concealed firearm. The drugs and the firearm were removed from his vehicle during a warrantless search by deputies from the Orange County Sheriff's Office after Diaz was stopped for violating section 316.1955, Florida Statutes (2022). In pertinent part, this section provides:

> (1) It is unlawful for any person to stop, stand, or park a vehicle within, or to obstruct, any such specially designated and marked parking space provided in accordance with s. 553.5041, unless the vehicle displays a disabled parking permit issued under s. 316.1958 or s. 320.0848 or a license plate issued under s. 320.084, s. 320.0842, s. 320.0843, or s. 320.0845, and the vehicle is transporting the person to whom the displayed permit is issued. . . .
>
> . . . .
>
> (d) A law enforcement officer or a parking enforcement specialist has the right to demand to be shown the person's disabled parking permit and driver license or state identification card when investigating the possibility of a violation of this section. If such a request is refused, the person in charge of the vehicle may be charged with resisting an officer without violence, as provided in s. 843.02.

§ 316.1955(1)(d), Fla. Stat. (2022).

---

unemployed from his IT job and needed to make some money, so he purchased fentanyl from local dealers, repackaged the drug, and sold it "to make quick cash." He also advised that he did not use fentanyl but sold it because it was "the go-to drug or what is hot these days." Diaz told the deputies that he carried the firearm because other drug dealers were threatening him for encroaching on their "turf."

In his motion to suppress, Diaz argued that the items confiscated from his car and the statements that he made to the deputies were obtained in violation of the Fourth Amendment to the Federal Constitution and article I, section 12 of Florida's Constitution that prohibit persons from being subjected to unreasonable searches and seizures. Diaz alleged that the deputies did not have probable cause to believe that he committed a traffic violation when he was stopped, nor did the deputies have reasonable suspicion to believe that he was involved in criminal activity.

A traffic stop is a seizure and thus implicates Fourth Amendment protections. *See State v. Hickman*, 363 So. 3d 217, 219 (Fla. 6th DCA 2023) (citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *Holland v. State*, 696 So. 2d 757, 759 (Fla. 1997)). In analyzing the constitutional validity of a traffic stop, courts in Florida employ a "strict objective test which asks only whether any probable cause for the [traffic] stop existed." *Id.* (alteration in original) (quoting *Holland*, 696 So. 2d at 759).

The uncontradicted testimony at the suppression hearing[2] from the deputies who conducted the traffic stop was that they observed Diaz operate his vehicle and then stop or park in a specially designated and marked handicapped parking space. The vehicle did not display either a disabled parking permit or a license plate issued

---

[2] Diaz did not testify at the suppression hearing, nor did he present any evidence for the trial court's consideration.

pursuant to any of the statutes described in section 316.1955(1). After Diaz began driving away, the deputies initiated the traffic stop and approached Diaz. In response to their inquiry, Diaz did not provide the deputies with a disabled parking permit, driver's license, or state identification card reflecting a disability or handicap. *See* § 316.1955(1)(d), Fla. Stat. Diaz told the deputies that he was not handicapped, and he apologized to them for parking in the handicapped parking space.

The evidence also showed that Diaz had one passenger in his vehicle. Diaz did not indicate to the deputies that his passenger was disabled. The deputies also testified that they had previously observed the passenger prior to her entering Diaz's vehicle and that she appeared to have no difficulty walking.[3]

One of the deputies then testified that pursuant to the Orange County Sheriff Office's standard traffic stop protocol, Diaz was asked to step out of his vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110–11 (1977) (holding that when a driver has been lawfully stopped for a traffic violation, law enforcement officers may ask the driver to exit the vehicle without violating the Fourth Amendment); *see also Maryland v. Wilson*, 519 U.S. 408, 413 n.1 (1997) (noting that while issuing per se rules concerning search and seizure is typically avoided, this does not mean that it is never done, as evidenced by the brightline rule established in *Mimms*).

---

[3] The passenger also briefly spoke with one of the deputies and was unable to provide a driver's license or identification card.

Prior to exiting his vehicle, Diaz advised the deputies that he had a handgun and had no concealed weapons permit. After Diaz stepped out of his vehicle, the firearm, previously concealed by Diaz, became visible to the deputies, which they confiscated. Diaz was arrested, and the deputies then conducted an inventory search of the vehicle where they discovered the subject fentanyl and methamphetamine.

In granting Diaz's motion to suppress, the trial court concluded that because the deputies only observed Diaz in the "handicapped parking" spot for two minutes, there was insufficient evidence that Diaz had committed a "clear traffic infraction." The trial court related from its own "background" that it can take "a lot more than two minutes" to display a disability parking permit. The court further explained that under section 316.1955(3), Florida Statutes, a person may temporarily stand in this parking space without the need for a disabled parking permit or a special license plate if they are chauffeuring a person who has a disability and are loading or unloading that person.[4]

---

[4] Section 316.1955(3), Florida Statutes, reads:

> Any person who is chauffeuring a person who has a disability is allowed, without need for a disabled parking permit or a special license plate, to stand temporarily in any such parking space, for the purpose of loading or unloading the person who has a disability. A penalty may not be imposed upon the driver for such temporary standing.

ANALYSIS

Our review of a trial court's ruling on a motion to suppress is a mixed question of law and fact requiring that we defer to the trial court's findings of fact provided they are supported by competent substantial evidence, but apply the de novo standard of review to the trial court's application of the law to the facts. *Delhall v. State*, 95 So. 3d 134, 150 (Fla. 2012) (citing *Connor v. State*, 803 So. 2d 598, 605 (Fla. 2001)). We conclude that the trial court's application of the law to the facts was erroneous and that there was not competent substantial evidence to support its factual findings.

First, the trial court's analysis that the evidence must be suppressed because there was no clear traffic violation to justify the stop applied an incorrect standard. The test to be applied in analyzing the propriety of the traffic stop was whether probable cause existed that a traffic offense was committed. *State v. Crume*, 49 Fla. L. Weekly D1780 (Fla. 6th DCA Aug. 21, 2024) (citing *State v. Wimberly*, 988 So. 2d 116, 120 (Fla. 5th DCA 2008)). Here, applying the objective standard, *see Whren*, *supra*, probable cause existed regarding Diaz's apparent violation of section 316.1955. *Cf. State v. Arevalo*, 112 So. 3d 529, 531–32 (Fla. 4th DCA 2013) (concluding that the defendant's parking in a no-parking zone provided probable cause for the traffic stop).

6

Second, there was no competent substantial evidence about how long it takes a person to display a disability parking permit; nor does section 316.1955 contain language expressly requiring that law enforcement wait a specific amount of time before initiating a traffic stop for improper parking, standing, or stopping in a designated handicapped parking space.[5] *See Hayes v. State*, 750 So. 2d 1, 4 (Fla. 1999) (recognizing that courts "are not at liberty to add words to statutes that were not placed there by the Legislature" (citing *In re Ord. on Prosecution of Crim. Appeals*, 561 So. 2d 1130, 1137 (Fla. 1990))). Moreover, Diaz admitted that he did not have a disability parking permit.

Third, there was no evidence that Diaz was chauffeuring or loading or unloading a disabled person. As previously indicated, the traffic stop was initiated after Diaz drove away from the handicapped parking space without ever having displayed the required decal and without having loaded or unloaded any person, let alone a person who may have had a disability. And, as previously mentioned, the only evidence before the trial court was that Diaz's one passenger did not appear to be disabled, nor did Diaz or the passenger indicate that she was disabled.

---

[5] Chapter 316 of the Florida Statutes defines "stop" as "complete cessation from movement"; "stand" as "[t]he halting of a vehicle . . . otherwise than temporarily, for the purpose of, and while actually engaged in, receiving or discharging passengers"; and "park" as "[t]he standing of a vehicle . . . otherwise than temporarily for the purpose of and while actually engaged in loading or unloading merchandise or passengers." § 316.003(55), (82), (84), Fla. Stat. (2022).

Diaz was also properly directed by the deputies to exit his vehicle. *See Mimms*, 434 U.S. at 110–11.[6] Upon doing so, the concealed firearm then became visible to the deputies and should not have been suppressed by the trial court. *See State v. Benjamin*, 229 So. 3d 442, 442, 444 (Fla. 5th DCA 2017) (reversing a trial court order suppressing a firearm hidden under the defendant's leg and discovered when he was ordered out of his vehicle as part of a lawful traffic stop), *approved*, *State v. Creller*, 386 So. 3d 487 (Fla. 2024). Reasonable suspicion that Diaz was involved in criminal activity then existed, resulting in his arrest. The post-arrest inventory search of Diaz's vehicle, which itself was not sufficiently challenged below, permissibly uncovered the fentanyl and methamphetamine in a satchel located in front of the driver's seat.[7]

Accordingly, we reverse the suppression order and remand for further proceedings.[8]

REVERSED and REMANDED.

---

[6] In *Mimms*, the police officer had no particular suspicion about the driver's behavior but had a practice of asking drivers to exit their vehicles as a "precautionary measure" to provide the officer with a level of protection. 434 U.S. at 109–10.

[7] *See Whren*, 517 U.S. at 811 n.1 ("An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976))).

[8] The trial court previously entered an order staying the proceedings below and tolling speedy trial pending the disposition of this appeal.

TRAVER, C.J., and NARDELLA, J., concur.

Ashley Moody, Attorney General, Tallahassee, and Daniel Caldwell, Assistant Attorney General, Daytona Beach, for Appellant.

Howard L. "Rex" Dimmig, II, Public Defender, and Kevin Briggs, Assistant Public Defender, Bartow, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED