616 So.2d 615 (1993)
Rhoan CLAYTON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 91-3438, 92-0224.
District Court of Appeal of Florida, Fourth District.
April 14, 1993.
*616 Richard L. Jorandby, Public Defender, and Susan D. Cline, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Douglas J. Glaid, Asst. Atty. Gen., West Palm Beach, for appellee.
FARMER, Judge.
Defendant appeals his conviction for carrying a concealed firearm on several grounds. Although we find other error, we reverse the conviction outright because of the threshold error in denying his pretrial motion to suppress.[1]
Taking the evidence in a light most favorable to the state, the facts unquestionably demonstrate the following. Several officers testified to establish that a minimum of seven officers, in three vehicles, were operating as a narcotics task force. The officers were dressed in black jackets with the legend, "SHERIFF", in large yellow letters on the front, and the words, "BROWARD COUNTY SHERIFF'S OFFICE DRUG TASK FORCE", on the reverse.
One or more of them, seeing defendant either approaching or standing at his vehicle in a convenience store parking lot, saw him unsnap a waist pouch and toss it into the bed of his pickup truck. Two of the police vehicles pulled up to the defendant, and a minimum of four officers jumped out. One officer, wearing his gun and badge, rushed up to the defendant and "aggressively" (the trial court's own description, not ours) inquired of him: "What was that you threw in the truck." Defendant replied: "That was my gun." When the officer was asked what he would have done if the defendant had refused to respond, he candidly replied: "I probably would have retrieved the pouch * * * [a]nd found out was in [it] * * *." The police seized the pouch and, finding the weapon inside, charged defendant with carrying a concealed weapon.
The trial court erroneously characterized the circumstances presented in this case as a voluntary, police-citizen encounter. Thus the court wrongly concluded that the officer did not need the "reasonable articulable suspicion" necessary to support a Terry stop.[2] To the contrary, the Supreme Court has established that "a seizure occurs when a reasonable person would believe that he or she is not `free to leave.'" Florida v. Bostick, ___ U.S. ___, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); Michigan v. Chesternut, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988). The "crucial test," according to the Court, is:
whether, taking into account all of the circumstances surrounding the encounter, the police conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."
Bostick, ___ U.S. at ___, 111 S.Ct. at 2387; Chesternut, 486 U.S. at 569, 108 S.Ct. at *617 1977; see also California v. Hodari D., ___ U.S. ___, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991). As we held in State v. Grant, 392 So.2d 1362 (Fla. 4th DCA), rev. denied, 402 So.2d 610 (Fla. 1981):
Examples of circumstances that might indicate a seizure even where the person did not attempt to leave, would be threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.
392 So.2d at 1365.
On the other hand, a seizure does not result from the police merely approaching citizens to put questions to them, or to ask for identification, or to request consent to search luggage  "so long as the police do not convey a message that compliance with their requests is required." Bostick, ___ U.S. at ___, 111 S.Ct. at 2386; see also Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion); and INS v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).
It is obvious to us from the trial court's resolution of the evidence that the police here communicated to defendant that he was not at liberty to ignore their presence and go about his business. We find instead, as a matter of law, from the presence of all the Grant factors that Clayton experienced a seizure in every sense of the word. We entirely disagree with the trial court's conclusion that this all amounted to nothing more than a consensual encounter between this obviously thunderstruck citizen and these officers. Without repeating everything in the Supreme Court decisions cited above that supports our conclusion, we confidently hold that these circumstances cannot possibly be the kind of police-citizen encounter left unprotected by the Fourth Amendment.
REVERSED.
DELL and KLEIN, JJ., concur.
NOTES
[1] We note, en passant, that the trial court also erred in rejecting defendant's challenge for cause of a prospective juror. The juror in question expressed a steadfast and clear bias in favor of the credibility of police officers. The failure to excuse such a juror for cause is manifest error. See Mann v. State, 571 So.2d 551 (Fla. 3d DCA 1990); Duncan v. State, 588 So.2d 50 (Fla. 3d DCA 1991).
[2] No reasonable view of the facts found by the trial judge in this case supports a conclusion that the officer did possess the requisite reasonably founded suspicion necessary to justify a stop. See § 901.151, Fla. Stat. (1991); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).