934 So.2d 681 (2006)
Gilbert BECKHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-2242.
District Court of Appeal of Florida, Second District.
August 9, 2006.
*682 James Marion Moorman, Public Defender, and Bruce P. Taylor, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and William I. Munsey, Jr., Assistant Attorney General, Tampa, for Appellee.
DAVIS, Judge.
Gilbert Beckham challenges his judgment and sentence on charges of trafficking in hydrocodone and possession of marijuana with intent to sell. He argues that the trial court erred in denying his motion to suppress. We agree and reverse.
On December 18, 2003, an officer with the Clearwater Police Department noticed Beckham and two other individuals in a stall at a car wash located in a neighborhood known for its drug activity. The officer had previously been assigned to the bicycle patrol in this area as part of the Homeless Intervention Project and, during the course of his duties, had encountered Beckham in the neighborhood on numerous occasions. Although none of these prior encounters involved any criminal investigation, the officer had come to know Beckham by name. On this date, the officer was a passenger in a patrol car that was being driven by an officer trainee.
At the suppression hearing, the officer testified that prior to this encounter, he had received word from two transients he knew from the neighborhood that Beckham was selling marijuana. However, the officer did not say specifically when he received this information, whether the transients explained how they acquired this knowledge, or if the transients said when Beckham had been involved in this alleged drug activity. Additionally, a fellow officer had advised him during the week prior to this incident that a third officer had arrested Beckham on a marijuana-related charge. The officer did not testify as to when the arrest or the events leading up to that arrest had occurred.
The officer testified further at the hearing that as he and the officer trainee drove past the car wash, his attention was attracted to Beckham and two other individuals standing by a bicycle in a car wash stall. He noted that Beckham's pants were falling down and that the "upper quadrant" of his buttocks was exposed. As the patrol car pulled into the car wash parking lot, the other two individuals began to walk away to the south and Beckham began to ride away on his bicycle heading north. The trainee called out to Beckham, who either did not hear him or ignored him. The trainee then called to him by name, and Beckham stopped his bicycle. As the officers approached, they observed that Beckham's pants were obviously too large for him, that he was not wearing a belt or underwear, and that his zipper was down but his genitals were not exposed. As they approached Beckham, they told him to pull up his pants. He did so, but they fell down again.
Upon reaching Beckham, the officers noted that he was very nervous and was reaching into his pockets. The officer trainee asked Beckham for his consent to perform a pat-down search. Beckham agreed but limited the search to a patdown by specifically stating that they could not go into his pockets. As the officer performed the pat-down, he felt something in Beckham's pocket. The officer testified *683 that, since the pants were so large, the pockets stood open and he could see directly down into the pocket without reaching in or opening it. In plain view he observed what he believed to be marijuana. The officer retrieved the marijuana, arrested Beckham, and after a further search, found additional contraband.
The trial court's detailed order denying the motion to suppress determined that the encounter was an investigatory stop, not a citizen encounter,[1] and that the stop was supported by reasonable suspicion. The trial court reasoned that the prior information provided to the arresting officer, together with the "observations and circumstances" noted by the officers' testimony, provided the officers with reasonable suspicion to justify the investigatory stop.[2] We disagree.
We review the trial court's application of the law to the facts in the denial of a motion to suppress de novo. Hines v. State, 737 So.2d 1182, 1184 (Fla. 1st DCA 1999). To justify an investigatory stop, the State must show that the officers possessed a "well-founded, articulable suspicion of criminal activity." Popple v. State, 626 So.2d 185, 186 (Fla.1993). The issue before us is whether these facts demonstrate such a suspicion.
Arguably, the facts of this case presented the officers with two potential alternative bases for suspecting criminal activity. A number of facts suggested that Beckham, at some unspecified time, had been involved in illegal drug activity, while other facts regarding Beckham's appearance suggested that Beckham might have been guilty of some type of criminal exposure violation. However, based on the totality of the circumstances as shown by the evidence at the suppression hearing, we conclude that neither theory, either individually or together, provided the officers with a well-founded suspicion of criminal activity sufficient to justify an investigatory stop. Looking at the totality of the circumstances, Beckham's appearance did not provide any additional basis for a suspicion that he was involved in drug activity, and the information regarding his prior drug activity did not provide any support for a suspicion that he was committing some type of indecency offense.
*684 We turn first to the potential theory that the officers reasonably suspected Beckham of illegal drug activity. In support of that theory, the trial court determined that the two unnamed persons who told the officer that Beckham had been selling marijuana were citizen informants, as to whom no corroboration was needed to assume their reliability. See Aguilar v. State, 700 So.2d 58, 59 (Fla. 4th DCA 1997). The trial court concluded that their tip, together with Beckham's appearance, provided the officers with the reasonable suspicion to stop and detain Beckham. Although we agree that the two individuals did meet the definition of citizen informants, we disagree that the nature of the tip was sufficient to justify the detention.
In other citizen informant cases, in addition to providing information alleging illegal activity, the tips included some time frame for the citizen informants' observations and the basis of the citizen informants' knowledge. See State v. Maynard, 783 So.2d 226, 227 (Fla.2001) (involving tip from suspect's mother that suspect had "just left" a specific address carrying a machine gun in a green backpack); Aguilar, 700 So.2d 58 (involving teenager's tip that he saw a man with a gun; teenager remained with police and identified man); State v. Evans, 692 So.2d 216 (Fla. 4th DCA 1997) (involving tip from McDonald's restaurant manager that customer currently at the drive-through window appeared intoxicated and smelled of alcohol). In this case, the officer testified only that the two citizen informants had previously advised him that Beckham had been selling marijuana. When the sale of marijuana had occurred and how these two citizen informants knew of this activity was not included in the testimony provided to the trial court.
This court has stated that "[t]he use of stale information will not create the founded suspicion necessary to support" an investigatory stop. Jain v. State, 577 So.2d 1002, 1003 (Fla. 2d DCA 1991). Here, the State presented evidence that "within a week or two" prior to the officers' contact with Beckham they had been told that he had been selling drugs. While this evidence established a time frame for when the officers acquired their information, it did not establish the time frame during which Beckham had been engaged in drug dealing. Further, nothing in our record reflects that the information was not stale. Accordingly, although the two sources may have qualified as citizen informants whose reliability did not require further corroboration, at the time of the stop the information did not give the officers a basis to support a reasonable suspicion that Beckham had committed, was committing, or was about to commit a crime. At best, the tip arguably provided the officers with a belief that Beckham, at some previous, unknown time, had been involved in marijuana sales.
Likewise, the information regarding the prior arrest of Beckham on marijuana charges was insufficient. There is nothing in the record to show the time frame of the prior arrest. Additionally, a suspect's prior arrest on drug charges does not provide a well-founded suspicion of current illegal drug activity; it merely provides the officers with a hunch. See King v. State, 521 So.2d 334 (Fla. 4th DCA 1988).
Similarly, the fact that three people are standing in a car wash stall in a neighborhood known for its drug transactions may supply the officers with a "hunch" but not a reasonable suspicion. See Hills v. State, 629 So.2d 152, 156 (Fla. 1st DCA 1993) ("[B]ehavior, which may be suspicious but not demonstrably or conceivably criminal, is not sufficient to establish a founded *685 suspicion, even in a high crime area."); see also Walker v. State, 846 So.2d 643, 645 (Fla. 2d DCA 2003) ("A bare suspicion or mere `hunch' that criminal activity may be occurring is not sufficient."). The officers saw no exchange of money or drugs and saw nothing passing from one individual to another. See Burnett v. State, 644 So.2d 152 (Fla. 2d DCA 1994). The officer trainee acknowledged that he had stated in his deposition testimony that he observed the individuals huddled together and that it looked like a drug transaction, but he gave no other information as to why it looked like a drug transaction. Further, he added that the other officer had "pin-pointed it out."
Furthermore, the fact that the three individuals left the area going in separate directions did not elevate the hunch to a reasonable suspicion. See Wilson v. State, 707 So.2d 893 (Fla. 2d DCA 1998).
Even when taken together, all of these circumstances, along with the belief that Beckham previously had been involved in drug activity, fail to justify the stop. See King, 521 So.2d 334 (concluding that even if the site was a high crime area that was near two known drug houses, officer did not have a founded suspicion to stop vehicle occupied by two white males that was approached by a black male, who was known to the officer to be a drug dealer, and a Mexican male, where the black male walked away quickly as the officers approached). We conclude that the officers did not have a "well-founded, articulable suspicion" that Beckham was involved in a drug transaction at the time of the stop. See Popple, 626 So.2d at 186.
Finally, the circumstances regarding Beckham's appearance did not justify the stop. The officers did not suggest that Beckham's appearance was a violation of any law, and they did not charge him with any offense related to the partial exposure of his buttocks. The trial court's order does not specifically mention Beckham's appearance as a basis for the stop. Rather, the trial court's order determined that the officers had reasonable suspicion to stop and detain Beckham but failed to specify whether the suspected criminal activity was drug-related or due to any possible charges relating to his appearance.
The testimony at the suppression hearing was inconsistent and vague as to the role Beckham's appearance and apparent exposure of his buttocks played in the stop. One of the officers testified that the basis for the stop was "twofold," i.e., it consisted of the prior information in addition to Beckham's appearance. Later during the hearing, however, he testified that he would have stopped Beckham based on his appearance alone.
Our review of the facts related to Beckham's appearance leads us to conclude that the officers lacked a well-founded suspicion of criminal activity with regard to Beckham's exposure of his buttocks. These facts would not justify any suspicion of lewd or lascivious behavior. See Goodmakers v. State, 450 So.2d 888, 891 (Fla. 2d DCA 1984) ("[I]n order for there to be a violation of [the indecent exposure statute], there must be, coupled with mere nudity, `lascivious' exposition or exhibition of the defendant's sexual organs."). Further, the conduct would not qualify as disorderly conduct pursuant to section 877.03, Florida Statutes (2003), as there was no evidence that Beckham's partial exposure of his buttocks was an act of such a nature as "to corrupt the public morals, or outrage the sense of public decency." Considering the totality of the circumstances, we conclude that Beckham's partial exposure *686 of his buttocks did not provide the officers a reasonable suspicion to believe that criminal activity was occurring.
Because the evidence reflects that the officers lacked the required well-founded suspicion to stop Beckham, we conclude that the trial court erred in denying the motion to suppress.
Reversed.
SILBERMAN, J., and THREADGILL, EDWARD F., Senior Judge, Concur.
NOTES
[1] The trial court's conclusion that this was an investigatory stop is supported by the factual findings. Upon Beckham's observing the patrol car, he mounted his bicycle and began to ride away. After pulling the patrol car onto the car wash property, the officers exited the vehicle and the trainee called to Beckham. Beckham did not respond and continued to ride away. The trainee then called to him a second time, using his name. It is at this point that Beckham stopped. Although the trial court did not specifically discuss the testimony that Beckham gave at the suppression hearing, his testimony also is consistent with the court's conclusion that the stop was an investigatory stop. Beckham testified that while he was speaking with someone, the officers pulled up in their car and directed him to "hold it right there." The officers acknowledged that they called out to Beckham, but they did not provide any detail as to what they stated.

The State has not challenged the trial court's conclusion by cross-appeal. The facts found by the trial court support a conclusion that Beckham stopped in acquiescence to the apparent authority of these uniformed officers exiting a marked patrol car. Although he did ignore the first call, since they continued to call and used his name, the trial court was justified in determining this was an investigatory stop.
[2] The trial court's order also determined that the consent to perform the pat-down search was valid and that once the officer saw the marijuana in plain view, the resulting arrest and search were proper. Since we conclude that the officers lacked the reasonable suspicion to make the initial stop and that this was not a consensual encounter, we do not review this additional finding.