GROSS, C.J.
 

 We reverse the circuit court’s finding that an interaction between appellant and a detective was a consensual encounter because, under the circumstances, a reasonable person would not have believed that he was free to disregard the order of a detective and leave the area. The stop and subsequent search therefore violated the Fourth Amendment.
 

 Late one night a detective saw two males standing in the corner of the open parking lot of a closed daycare center. One of them was the 16 year old appellant. The detective got out of his car to investigate why the pair was on the property. At the same time, four or five other officers jumped out of their vehicles and walked past appellant to focus on other persons. When appellant walked away from the parking lot, the detective “called him back.” The detective did not pull his weapon. Appellant testified that he came back because “[h]e was a policeman; I had to come back.”
 

 The area was a high narcotics area, so the detective asked appellant, “Is there anything I should know about? Is there anything on you I need to know about?” Appellant responded, ‘Tes, I have a bag of marijuana,” and handed it to the detective.
 

 Appellant moved to suppress the seizure of the marijuana. After an evidentiary hearing, the circuit court denied the motion, holding that the stop was a consensual encounter and that appellant’s responses to the detective’s questions were voluntary. Appellant entered a plea of no contest to possession of less than 20 grams of cannabis and reserved the right to appeal the issue raised in the motion to suppress.
 

 
 *215
 
 This case implicates the fuzzy constitutional line between a consensual encounter and an investigatory stop.
 
 See Johnson v. State,
 
 785 So.2d 1224, 1228 (Fla. 4th DCA 2001) (acknowledging the “analytical difficulty” in distinguishing a citizen encounter from an investigatory stop). The Florida Supreme Court has described “three levels of police-citizen encounters” for the purpose of Fourth Amendment analysis.
 
 Popple v. State,
 
 626 So.2d 185, 186 (Fla.1993). A first level “consensual encounter” involves “only minimal police contact,” during which
 

 a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.
 

 Id.
 
 at 186 (citing
 
 U.S. v. Mendenhall,
 
 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). The second level of police-citizen encounter is an investigatory stop.
 
 Id.
 
 At this level,
 

 a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. In order not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.
 

 Id.
 
 (citations omitted).
 
 [1]
 
 Thus, an investigatory stop is a seizure for constitutional purposes, which requires a factual basis to support it. However, a consensual encounter is not a seizure, so it may occur without repercussion, even when a police officer has no reason to suspect that criminal activity is afoot.
 

 “[W]hether a person has been seized in the constitutional framework -will be judged in accordance with the reasonable-person standard articulated by the United States Supreme Court in
 
 United States v. Mendenhall
 
 .... ”
 
 G.M. v. State,
 
 19 So.3d 973, 978 (Fla.2009). In
 
 Menden-hall,
 
 a plurality of the Court concluded
 

 that a person has been “seized” within the meaning of the
 
 Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.
 
 Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.
 

 G.M.,
 
 19 So.3d at 978 (quoting
 
 Mendenhall,
 
 446 U.S. at 554, 100 S.Ct. 1870 (emphasis added) (footnote omitted));
 
 see also Michigan v. Chesternut,
 
 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988) (where Supreme Court adopted the “free to leave” analysis utilized by the
 
 Menden-hall
 
 plurality to determine whether a seizure has occurred). Whether a seizure has occurred “is determined by what a reasonable person in [the defendant’s] position would have concluded based upon the conduct of the officers.”
 
 G.M.,
 
 19 So.3d at 980 n. 5 (citation omitted).
 

 Here, appellant began to walk away from the detective. He returned to engage the detective as the result of what
 
 *216
 
 a reasonable person would believe was an order, so this response was more of a surrender to authority than an act of free will. Florida courts have held that a police officer’s direction to a person to do a particular thing, such as to get out of a car, to take hands out of pockets, or to open a mouth are indicative of a seizure.
 
 See Popple,
 
 626 So.2d at 188 (concluding that deputy’s “direction” for defendant to “exit his vehicle constituted a show of authority which restrained [defendant’s] freedom of movement” amounted to a seizure);
 
 Kramer v. State,
 
 15 So.3d 790, 791 (Fla. 5th DCA 2009) (ordering Kramer to open his mouth transformed consensual encounter into an investigatory stop);
 
 Johnson,
 
 785 So.2d at 1228 (explaining that “ ‘[orders or even requests to remove a hand from a pocket causes a consensual encounter to become a seizure.’ ” (quoting
 
 Harrison v. State,
 
 627 So.2d 583, 584 (Fla. 5th DCA 1993)));
 
 Grant v. State,
 
 596 So.2d 98, 100 (Fla. 2d DCA 1992) (finding encounter not consensual where officer ordered defendant to come over and talk with him).
 

 This case resembles
 
 D.G. v. State,
 
 where this court held that a reasonable juvenile would not feel free to leave, where
 

 the officer did not approach the juveniles, nor did he ask whether they minded approaching him to answer some questions. On the contrary, he ordered them to come over to him, using words of compulsion.
 

 714 So.2d 644, 646 (Fla. 4th DCA 1998).
 

 Here, the detective stated that when he saw appellant walk down the street, “that’s when I got out of my car and I called out to him.” He stated that he “called him back.” Appellant testified that the detective said, “Yo, come here” and that the detective “told me to come here.” He did not feel free to disobey that directive, because he knew the detective was an officer in the middle of a police action in which four or five other officers were involved. The detective’s words were more indicative of a command than a question, so this case is distinguishable from the line of cases holding encounters to be consensual where a policeman’s words were non-aggressive, indicative of a docile request suggesting that a defendant had the option to refuse.
 
 See P.W. v. State,
 
 965 So.2d 1197, 1198 (Fla. 4th DCA 2007) (police officer in marked car pulled up next to juvenile and asked to speak with him through open window);
 
 Chapman v. State,
 
 780 So.2d 1036, 1037 (Fla. 4th DCA 2001) (holding that one officer asking defendant to “[c]ome here for a minute, can I talk to you,” was not a seizure);
 
 State v. Crumpton,
 
 676 So.2d 987, 988-89 (Fla. 2d DCA 1996) (asking defendant if “he ‘minded’ coming over to the unit and telling the officer what he had placed in his pocket” did not constitute a seizure).
 

 Another factor supporting the finding of a seizure is that the detective approached appellant during a police sweep involving other officers. A police action involving a number of officers is a fact that can influence a person’s perception that he is not free to ignore an officer’s command. Thus, in
 
 Clayton v. State,
 
 616 So.2d 615, 616-17 (Fla. 4th DCA 1993), the presence of four officers from a narcotics task force was one factor that “communicated to [the] defendant that he was not at liberty to ignore their presence and go about his business.”
 
 Compare J.N. v. State,
 
 778 So.2d 440, 442 (Fla. 3d DCA 2001) (where three uniformed officers in police cars pulled up alongside juvenile and ordered him to stop, court concluded that a seizure had occurred),
 
 with State v. Triana,
 
 979 So.2d 1039, 1044 (Fla. 3d DCA 2008) (observing that “[t]he presence of police officers alone, absent any indication of coercive words or acts, misrepresentation, deception, or trickery is insufficient
 
 *217
 
 to raise an inference of submission to police authority”).
 

 In this case, the convergence of the police officers combined with the detective’s order created a display of authority sufficient to convince a reasonable juvenile that he had no choice but to comply with the detective’s direction. For this reason we hold that a seizure occurred when appellant returned to face the detective.
 

 Finally, we reject the state’s alternative argument that the detective had reasonable suspicion to make an investigatory stop of appellant for trespassing. The parking lot where appellant was standing was an open parking lot on a corner, and people walking down the street often cut the corner by walking through the unenclosed lot. The state did not present sufficient evidence that the lot was “posted” within the meaning of subsections 810.09(l)(a) and 810.011(5)(a), Florida Statutes (2008).
 
 See Baker v. State,
 
 813 So.2d 1044 (Fla. 4th DCA 2002);
 
 Smith v. State,
 
 778 So.2d 329, 330 (Fla. 2d DCA 2000). Appellant had already left the premises when he was stopped.
 
 See L.J.S. v. State,
 
 905 So.2d 222, 225-26 (Fla. 2d DCA 2005).
 

 We reverse the conviction for possession of cannabis and remand to the circuit court to discharge the defendant.
 

 MAY and CIKLIN, JJ., concur.
 

 [1]
 

 . The third level of police-citizen encounter is an arrest supported by probable cause that a crime has been or is being committed.
 
 Popple,
 
 626 So.2d at 186. Here, once appellant turned over the marijuana, there was probable cause to arrest. This case turns on the issue of whether there was an earlier constitutional violation.