ON MOTION FOR REHEARING

GROSS, J.
We grant the motion for rehearing, withdraw the opinion that issued on June 20, 2012, and issue the following opinion.
The state challenges orders granting motions to suppress filed by two defendants who occupied a car in which marijuana was discovered after a traffic stop. We sua sponte consolidate these two cases and reverse. The strong odor of raw cannabis emanating from the car’s interior gave the officer probable cause to both arrest the occupants and search the vehicle.
While patrolling U.S. 27, Officer Eric Abrahamson spotted a black, four-door In-finiti with what he suspected were illegally tinted windows. The officer stopped the car, which was driven by Christopher Sar-ria. Jorge Sarria, Christopher’s father, was in the front-passenger seat. At that time, other vehicles were traveling at high rates of speed on U.S. 27, a highway. On one side of the highway was the Everglades; on the other, a field.
While talking to Christopher, the officer “notic[ed] the distinct odor of raw cannabis emitting from the interior of his vehicle.” The odor was so strong that Officer Abra-hamson could smell it with the door shut and window open. The officer requested backup, resulting in Officer Kevin Burg’s arrival at the scene. Officer Abrahamson then asked Christopher to get out of the car, telling him he smelled marijuana. No guns were drawn.
Officer Abrahamson placed Christopher in handcuffs. The officer also had Jorge exit the car and placed Jorge in handcuffs. As Christopher and Jorge waited at the rear of the car under Officer Burg’s supervision, Officer Abrahamson conducted a search of the car.
After several minutes, the search uncovered a bag containing twenty-eight grams of marijuana in the glove box, an old, burnt marijuana roach, and a small piece of loose marijuana in the center console.
Officer Burg’s testimony was consistent with Abrahamson’s. He, too, “detected a very strong smell of raw, unburnt cannabis emanating from the open driver side window.”
After the search revealed the marijuana, Officer Abrahamson read both Sarrias their Miranda rights. Both Sarrias made statements implicating themselves in the possession of marijuana.
The Sarrias filed motions to suppress the fruits of the search and their statements.
The trial judge appears to have denied the motion to suppress the physical evidence, but granted the motion to suppress the statements. She ruled that once the officers smelled the odor of marijuana coming from the vehicle, they had probable cause to search the car. However, she granted the motion to suppress because she found that the handcuffing of the Sar-rias amounted to an illegal arrest, because it occurred before the officer discovered the marijuana. She reasoned that the Miranda warnings failed to purge “the primary taint of the illegal arrest.”
Officer Abrahamson’s initial stop of the Sarrias’ car was valid. “[A] law enforcement officer is clearly entitled to stop a vehicle for a traffic violation.” Cresswell v. State, 564 So.2d 480, 481 (Fla.1990) (cita *284 tion omitted). Excessive rear-window tint is a noncriminal traffic violation. § 316.2954, Fla. Stat. (2010). The trial judge found that the “rear windows” were “illegally tinted.” Officer Abrahamson therefore had probable cause to make the stop. See Holland v. State, 696 So.2d 757 (Fla.1997) (a traffic stop is constitutionally reasonable when supported by probable cause that a violation of traffic law has occurred).
Once the officers smelled the raw marijuana, the traffic stop evolved into something more. The odor of burnt cannabis generates probable cause to both search a vehicle and arrest the occupants. See State v. Williams, 967 So.2d 941, 941 (Fla. 1st DCA 2007) (“the odor of burnt cannabis emanating from a vehicle constitutes probable cause to search all occupants of that vehicle”); State v. T.P., 835 So.2d 1277, 1278 (Fla. 4th DCA 2003) (“[Ujpon approaching T.P.’s car and smelling previously burnt marijuana, the officer had probable cause, based upon the smell alone, to detain and search T.P. and his vehicle for contraband.” (citations omitted)); State v. K.V., 821 So.2d 1127, 1128 (Fla. 4th DCA 2002) (“Here, the tip from the security guard, the smoke billowing out of the car, and the smell of burning marijuana gave Deputy Vazquez ample probable cause to arrest the occupants and search both their persons and the vehicle.”). For the purpose of providing a basis for probable cause, we see no reason to distinguish the odor of burnt marijuana from the odor of raw marijuana. See Kimball v. State, 951 So.2d 35, 37 (Fla. 1st DCA 2007) (holding that the odor of raw marijuana coming from a vehicle provided probable cause to search it). In fact, the smell of burnt marijuana coming from a car window is consistent with personal use of marijuana in the passenger compartment, raising the possibility that all of the drug has been consumed by combustion. On the other hand, “the overpowering smell of raw marijuana” raises a “fair probability that the car is being used to transport large quantities of marijuana,” U.S. v. Downs, 151 F.3d 1301, 1303 (10th Cir.1998), thereby providing an even stronger basis for a search than exists when the odor of burnt marijuana is present.
Once Officer Abrahamson detected the distinct odor of raw cannabis, he had probable cause to search the car and arrest the Sarrias; it did not matter if he arrested first and searched later. For example, in State v. Wells, 516 So.2d 74, 74 (Fla. 5th DCA 1987), an officer smelled the odor of burning marijuana coming from a van as the defendant exited the van. The officer detained the defendant and searched the van’s passenger compartment. Id. The search revealed over two dozen roaches and five baggies of marijuana. Id. The officer then formally placed the defendant under arrest. Id. The defendant moved to suppress the evidence, and the trial court granted the motion. Id.
On appeal, the fifth district wrote, “When a police officer who knows the smell of burning marijuana detects that odor emanating from a vehicle, or from a person who has recently exited a vehicle, he has probable cause to believe a crime has been committed and that such person has committed it.” Id. The probable cause authorized the “the arrest of such person and a warrantless search, either before or after the arrest, of the passenger compartment of the vehicle.” Id. Other cases have similarly held that, as long as probable cause exists, whether the search precedes the arrest or vice versa does not matter for the purpose of the Fourth Amendment. See, e.g., State v. Hutchins, 636 So.2d 552, 553 (Fla. 2d DCA 1994) (“Once probable cause exists, it is immaterial whether the search precedes the arrest or vice versa.” (citing Dixon v. State, 343 So.2d 1345,1349 (Fla. 2d DCA 1977))).
*285 Because he had probable cause to arrest, Officer Abrahamson did not have to justify the use of handcuffs as would be required for a temporary, investigatory stop. See Reynolds v. State, 592 So.2d 1082, 1084-85 (Fla.1992) (officer may use handcuffs as part of temporary detention “where it [is] reasonably necessary to protect the officers’ safety or to thwart a suspect’s attempt to flee,” but for only for so long as is necessary to confirm or dispel the reasonable suspicion). Because there was no illegal arrest, the trial court’s analysis under Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), was inapposite.
Finally, we note that two circumstances discussed at the trial level were irrelevant to the Fourth Amendment analysis: (1) Officer Abrahamson did not formally inform the Sarrias they were under arrest and (2) the officer considered the encounter to be an investigatory stop. Whether a seizure has occurred is an objective, contextual inquiry that does not depend on the formal announcement of an arrest or the officer’s subjective beliefs. See F.E.H., Jr. v. State, 28 So.3d 213, 215 (Fla. 4th DCA 2010) (“Whether a seizure [in the absence of a formal arrest] has occurred ‘is determined by what a reasonable person in [the defendant’s] position would have concluded based upon the conduct of the officers.’” (quoting G.M. v. State, 19 So.3d 973, 980 n. 5 (Fla.2009))).
For these reasons, we reverse the orders granting the motions to suppress statements and remand to the circuit court where the court may consider other Miranda related issues, such as the voluntariness of the statements.
POLEN and LEVINE, JJ., concur.