EDWARDS, J.
The question presented in this case is whether a police officer may ask a citizen twice to come over and speak to him without infringing upon that citizen’s Fourth Amendment rights. The State appeals the trial court’s order on rehearing granting Marques Albert’s motion to suppress evidence, and it argues that the rehearing judge erroneously concluded that the interaction between the police officer and Albert constituted an investigatory stop that was not supported by reasonable suspicion. The State points out that the motion to suppress was originally denied by a different judge, who concluded that the encounter was consensual after observing the police officer and Albert testimony. Based on the totality of the circumstances in this case, we find that this was not an investigatory stop. We reverse and remand to the trial court for further proceedings.
Albert was charged with possession of cocaine under twenty-eight grams, possession of hydromorphone, and possession or use of drug paraphernalia. The charges' stem from an encounter with Officer Jeremy Pergerson, a K-9 officer with the Ti-tusville Police Department. Albert filed a motion to suppress the evidence that Per-gerson obtained from Albert during their encounter.
Judge John Griesbaum held the original hearing on Albert’s motion. At this hear *9 ing, Pergerson testified that on March 9, 2014, while patrolling an area he considered a “high crime” and “high drug” area, he identified Albert and other individuals at a residence. Based on Pergerson’s patrol duties and prior investigations, he testified that he knew drug activity occurred at the residence on a daily basis. Perger-son explained that Albert had something in his hand that he appeared to be picking at, while a woman standing near Albert was looking at whatever he held in his hand. The officer further testified that one of the individuals noticed him approach, and alerted Albert to Pergerson’s arrival. According to Pergerson, Albert immediately became nervous, shoved whatever he was holding into his pockets, and began to walk away.
Pergerson believed Albert was involved in a drug transaction, but admitted that he did not have enough information at that time to justify conducting an investigatory stop to detain Albert. While staying between his marked patrol car and the sidewalk, Pergerson asked Albert to come over to him. Albert asked Pergerson why he was bothering him and said he was not doing anything wrong. During the encounter, Pergerson was the only police officer present, he did not block Albert’s path, did not follow him on foot, did not activate the police car’s siren or lights, and did not draw his pistol or any other weapon. The officer did not tell Albert that he was not free to leave, nor did he ask him to remove anything from his pockets. After asking him a second time to come over, Albert walked over to the officer. When Albert approached him, Pergerson detected the odor of marijuana on Albert and observed in plain view a cigar tube that had been cut in half protruding from Albert’s pocket. Following those observations, Pergerson searched Albert and discovered contraband that led to his arrest.
Albert testified at the hearing that he was compelled to walk toward Pergerson because the officer threatened to release the K-9 from the patrol car if Albert did not comply. According to Albert, the officer kept touching a button or control on his belt, which Albert believed could be used to let the K-9 out of the car. Though Pergerson had his Dutch Shepherd dog in his patrol car, a marked K-9 unit, he denied ever threatening to release the dog. As far as Pergerson was concerned, if Albert did not respond he would have been free to walk away.
The original written order denying the motion to suppress was issued in August 2014. In this order, Judge Griesbaum reviewed the testimony, including the differing accounts of whether the officer said that he would release the dog if Albert refused to come over. The trial court found the officer’s testimony more credible, and determined that no such threat or show of force had occurred. The court found that the totality of the circumstances were such that a reasonable person in Albert’s position would have felt free to leave or decline Pergerson’s request and that Albert was not detained by Perger-son. The court then concluded that there had been no seizure. Thus, the officer’s observations during the consensual encounter provided a basis for the search which led to discovery of the evidence. For those reasons, the trial court denied the motion to suppress.
Approximately six months later, Albert filed a motion for rehearing requesting the court review its conclusions of law, asserting that Albert’s counsel had not provided the original judge with a potentially relevant case, Beckham v. State, 934 So.2d 681 (Fla. 2d DCA 2006). Albert asserted that if the original judge had been provided with Beckham, he would have granted the motion to suppress. Judge Robin Lemoni- *10 dis presided over the motion for rehearing. Albert argued that Pergerson displayed a show of authority by repeatedly asking Albert to come over'to him. The State responded that Pergerson only asked Albert twice to come over, and he did not pursue Albert or the other individuals that were on the property. On rehearing, the court reversed the order denying the motion to suppress and ruled that Perger-son’s repeated requests for Albert to come to him constituted an investigatory stop. The court held that the circumstances surrounding the stop did not indicate that the officer had a reasonable or well-founded suspicion of criminal activity to justify an investigatory stop. Thus, on rehearing, the motion to suppress was granted.
When' reviewing a trial court’s rulihg on a motion to suppress, an appellate court is bound by the trial court’s factual findings, so long as they are supported by competent substantial evidence. State v. D.R., 67 So.3d-372, 373 (Fla. 3d DCA 2011). The determination of the existence- of probable cause is a legal issue that must be reviewed de novo. Pagan v. State, 830 So.2d 792, 806 (Fla.2002).
In Popple v. State, 626 So.2d 185, 186 (Fla.1993), the Florida Supreme Court outlined three levels of police-citizen encounters. The first level is consensual and involves minimal police contact. 626 So.2d at 186. During such an encounter, a citizen may choose to comply with or ignore an officer’s requests. Id. The second level, investigatory stop, permits an officer to reasonably, detain a citizen temporarily if the officer has a reasonable suspicion that the citizen has committed, is committing, or is about to commit a .crime. Id. The investigatory stop requires a well-founded, articulable suspicion of criminal activity to avoid violating a citizen’s Fourth Amendment rights. Id. The third level of police-citizen encounter is an -arrest which must be supported by probable cause that a crime has been or is being committed. Id.
“It is well established that an officer does not need to have a founded suspicion to approach an individual to ask questions.” Id. at 187; see also Beckham, 934 So.2d at 683. “[A] significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person’s freedom to leave or freedom to refuse to answer inquiries.-;.. ” Popple, 626 So.2d at 187. “A court, when determining whether a particular encounter is consensual, must look to all the circumstances surrounding the encounter when deciding if the police conduct would have communicated to a reasonable person that the person was free to • leave or to terminate the encounter.” Voorhees v. State, 699 So.2d 602, 608 (Fla.1997) (citing Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d,389 (1991)). The test for seizure is whether, under the circumstances, a. reasonable person would conclude that he is not free to leave the encounter. Voorhees, 699 So.2d at 608.
In Beckham, the Second District Court of- Appeal reversed a trial court’s denial of a motion to suppress because-the officers lacked a well-founded suspicion to conduct an investigatory- stop of Mr. Beckham. 934 So.2d at 686. As will be discussed below, Beckham did not require the Second District Court of Appeal to rule on whether that police-citizen encounter was consensual or an investigatory stop. A police officer, familiar with Beckham’s reputation for selling drugs, received a tip that Beckham was selling drugs. Id. at 682. While in a marked police ear being driven by a police trainee, the officer noticed Beckham on a bicycle in a car wash stall with two pedestrians. When the police car pulled off the street, onto the car wash parking lot, the two pedestrians began walking away, and Beckham started to *11 ride off on his bicycle. Id. The trainee called to Beckham, who either- ignored or did not hear him. Id. Beckham continued riding away on his bicycle. The trainee called to him again, this time by name, and Beckham stopped. Id. At the suppression hearing, Beckham testified “that the officers pulled up in their car and directed him to ‘hold it right there.’ ” Id. at 683 n. 1, The officers approached him and noticed he was nervous and reaching into his pockets. Id. The trainee asked for Beckham’s consent to perform a pat-down search. Id. Beckham agreed to the pat-down, but stated that the officer could not search in his pockets. Id. Because Beckham’s pants were so large and baggy, the pockets stood open and the officer could plainly see marijuana inside of them without having to reach inside. Id. at 683. “The officer retrieved the marijuana, arrested Beck-ham and after a further search, found additional contraband.” Id.
The trial court denied Beckham’s motion to suppress and found that the search was not a consensual encounter, but rather an investigatory stop supported by reasonable suspicion. Id. The court reasoned that the officers’ prior information about Beckham coupled with the officers’ observations provided them with reasonable suspicion to justify the stop. Id. The trial court’s characterization of the stop as investigatory rather than consensual was not' contested by the State on appeal. Id. at 683 n. 1. The Second District reversed. Id. at- 685. It found that the tip and the officer’s knowledge of Beckham’s prior drug charges was not sufficient to justify the detention. Id:
In Beckham, the Second District found that the trial court’s conclusion that it was an investigatory stop was supported by the factual findings. Id. at 683 n. 1. The Second District stated that “Beckham stopped in acquiescence to the apparent authority of these uniformed officers exiting a marked patrol car. Although he did ignore the first call, since they continued-to call and- used his name, the trial court was justified in determining this was an investigatory stop.” Id. The Second District described' Beckham’s testimony, that the police officers told him to “hold it right there,” as “consistent with the court’s conclusion that the stop was an investigatory stop.” Id. The outcome in Beckham only required a decision on whether or not the officers had the required well-founded suspicion to initiate the investigatory stop. There is also a factual difference between Beckham and Albert’s situation, as the police officers approached Beckham in their car, while here, Albert walked over to Officer Pergerson. Therefore, Beckham does not answer the question presented by the instant appéal.
In Chapman v. State, 780 So.2d 1036 (Fla. 4th DCA 2001), a police officer observed Chapman on a bicycle potentially impeding traffic, but not committing any traffic violations. 780 So.2d' at 1037. Without activating the lights or sirens on his patrol car, the officer asked Chapman to come to him to talk. Id. Chapman approached the officer and produced his identification when asked. Id. The officer noticed Chapman was nervous and shaking, and he asked to search him. Id. Chapman agreed and the search yielded six pieces of crack cocaine. Id. The trial court denied Chapman’s motion to suppress evidence and found that the encounter was consensual, involvéd minimal police contact, and Chapman was free to ignore the officer’s request.' Id. The Fourth District Court of Appeal affirmed. Id. at 1038. The court noted that the circumstances, viewed in their entirety, indicated no coercion that would lead a reasonable person to believe he was not free to disregard the officer. Id. Further, it found that the officer’s conduct was not *12 confrontational, coercive, oppressive, or dominating. Id. Chapman, while differing from the instant case in some factual respects, addresses and answers the question presented here. We find Chapman to be well reasoned and helpful in our analysis.
We are aware that there are other cases that involved more coercive or assertive police behavior than was present here, where courts have concluded that the police-citizen encounters were not consensual. See F.E.H. v. State, 28 So.3d 213, 214 (Fla. 4th DCA 2010) (holding a seizure, rather than a consensual encounter, occurred when several police officers jumped from their cars, and as the juvenile defendant started to walk away, he stopped and returned when one officer called to him: “yo, come here”); Young v. State, 982 So.2d 1274, 1275 (Fla. 4th DCA 2008) (finding a seizure occurred when an officer asked a pedestrian to come speak with him and a second officer blocked the sidewalk which prevented him from continuing to walk away); Oslin v. State, 912 So.2d 672, 675 (Fla. 5th DCA 2005) (finding a seizure occurred when officers shined a spotlight, activated the patrol car’s air horn, and repeatedly called to defendant).
The factual differences between F.E.H., Young, Oslin, and the instant case are sufficient to support and require different legal conclusions. Here, there was nothing preventing Albert from continuing to walk away, no police equipment was used to intimidate Albert, and there was only one officer who did nothing more than ask Albert, twice, to come speak with him. We conclude that the original order denying the motion to suppress was correct in finding this to be a consensual encounter that did not violate Albert’s Fourth Amendment rights. Accordingly, we reverse the order entered following rehearing that granted the motion to suppress.
REVERSED AND REMANDED.
PALMER and TORPY, JJ., concur.