SAWAYA, J.
We have consolidated for decision three appeals that present a common issue of statutory interpretation. The statute at issue is section 316.125, Florida Statutes (2013), and it governs entry of vehicles onto adjacent highways from adjoining business locations and parking lots. We must decide whether the trial court correctly interpreted this statute to require only that the driver yield the right-of-way to vehicular or pedestrian traffic. Resolution of this legal issue is necessary in order to determine whether the trial court prop-, erly granted the motions filed by each defendant to suppress the illegal drugs and paraphernalia (and in one case,- a concealed firearm) that were seized after deputies with the Citrus County Sheriffs Department stopped the three vehicles for violating this statute. The deputies concluded the statute was violated because the vehicles in each case failed to stop before crossing over a sidewalk or sidewalk area situated over the driveways adjacent to the highway. The trial court granted each motion after concluding that there was no. statutory requirement to stop before entering the highway because there was no vehicular or pedestrian traffic present in the area at the time. The State urges reversal, contending that the deputies legally stopped each vehicle because the statute requires vehicles to stop before crossing over driveways containing sidewalks or sidewalk areas regardless of pedestrian or vehicular traffic in the area.
The cases are strikingly similar both in terms of the issue presented and the facts' established by the evidence submitted in-each proceeding. As to the facts, two of the cases involve incidents that occurred at the same location, but on different dates. Sean Nelsón parked his car on ’the North side parking lot of a Chevron gas station located in the business district of Crystal River. This parking lot is adjacent to Highway 19 and has a driveway that allows patrons to enter the highway directly from the parking lot. A sidewalk borders both sides- of the driveway, and pictures introduced into evidence show that the sidewalk or sidewalk area appears to extend over the driveway. A deputy observed Nelson get into his vehicle and drive directly from his parked position in the parking lot onto the highway without stopping. The deputy initiated a traffic stop of the vehicle based on Nelson’s failure to stop before crossing over the sidewalk or sidewalk area onto the highway in violation of section 316.125. A subsequent consensual search of the vehicle uncovered drugs and paraphernalia. A concealed firearm was also found. Nelson was arrested and transported to jail. He filed a motion to suppress, arguing that the statute did- not require a stop before crossing over the driveway because there was no vehicular or pedestrian traffic present in the area at the time.
*1076 Coryon Nelson (who may be related to Sean Nelson) was parked at a gas pump located at the same Chevron gas station. He got into his vehicle and drove over the same driveway onto Highway 19 without stopping. He was stopped and a canine unit was summoned. The dog alerted to the car, and the subsequent search of the vehicle uncovered drugs and paraphernalia. Coryon- Nelson was arrested and transported to jail. His motion to suppress essentially parrots the arguments made in Sean Nelson’s motion.
.The facts relating to the case involving Ben Padgett differ regarding the date and location. The location of this incident is the parking lot of the Liquid Lagoon bar located adjacent to Highway 19 in the business district of Crystal River. Pad-gett was a passenger in a vehicle that exited the parking lot and entered the highway without stopping. The driveway at this location is similar to the driveway located at the Chevron gas station. Photographs in the record show a sidewalk leading up to both sides of the driveway, and it appears that the sidewalk or sidewalk area extends over the driveway. The vehicle was stopped and a canine unit was summoned. The dog alerted to the car, and a subsequent search of the vehicle uncovered illegal drugs under the passenger’s seat. Padgett was arrested and transported to jail. His motion to suppress presents arguments that are very similar to the arguments in the motions filed by the other two defendants.
In granting the motions to suppress, the trial court explained its interpretation of section 316.125 by stating that “[i]n its entirety it’s a failure-to-yield statute, and in its particulars it’s a failure-to-yield statute.” The trial court further explained that “[tjhere has to be something that has to be failed to yield to, a pedestrian or traffic.” If this is the proper interpretation of the statute, the trial court correctly granted the motions. But if not, we must reverse.
As a prelude to our discussion of the pertinent statutory provisions, a brief discussion of some very basic constitutional principles reveals why this issue of statutory interpretation is pivotal to our review. The Federal and Florida Constitutions declare in harmony that the right of the people to be secure against “unreasonable searches and seizures” shall not be violated. U.S. Const. Amend. IV; Art. I § 12, Fla. Const. A traffic stop is a seizure within the meaning of this constitutional guarantee. Whren v. U.S., 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); Holland v. State, 696 So.2d 757, 757 (Fla.1997). The course of decision in this court and others, using Whren as the guide, has clearly established that such a seizure is permissible if the deputy has probable cause to believe a traffic violation has occurred. Whren, 517 U.S. at 810, 116 S.Ct. 1769; Holland, 696 So.2d at 759; State v. Arevalo, 112 So.3d 529, 531 (Fla. 4th DCA 2013); State v. Thomas, 109 So.3d 814, 817 (Fla. 5th DCA 2013); State v. Wimberly, 988 So.2d 116, 119 (Fla. 5th DCA 2008); State v. Robinson, 756 So.2d 249, 250 (Fla. 5th DCA 2000). Traffic violations that may justify a stop include non-criminal traffic violations. See Arevalo, 112 So.3d at 531. Once a vehicle is stopped for a traffic violation, a properly trained canine may be summoned to search the exterior of the vehicle (provided that the search is accomplished within the time necessary to issue a citation) and if the dog alerts, a search of the remainder of the vehicle may ensue without offending this constitutional guarantee. See Whitfield v. State, 33 So.3d 787, 790 (Fla. 5th DCA 2010); Eldridge v. State, 817 So.2d 884, 887 (Fla. 5th DCA 2002); Robinson, 756 So.2d at *1077 250. The deputy may also ask for consent to search the person and the vehicle during a valid traffic stop. See State v. Nash, 957 So.2d 1266, 1266 (Fla. 4th DCA 2007) (citing State v. Johns, 920 So.2d 1156, 1157 (Fla. 2d DCA 2006)).
These principles dictate that the validity of the consent to search provided by Sean Nelson and the searches incident to the canine alerts in the other two cases initially depend on whether the deputies properly stopped each vehicle for a violation of section 316.125. See State v. Kindle, 782 So.2d 971, 973 (Fla. 5th DCA 2001). Thus, the meaning of section 316.125 is determinative in each case. For purposes of clarity of discussion and completeness, we quote section 316.125 in its entirety:
(1) The driver of a vehicle about to enter or cross a highway from an alley, building, private road or driveway shall yield the right-of-way to all vehicles approaching on the highway to be entered which are so close thereto as to constitute an immediate hazard.
(2) The driver of a vehicle emerging from an alley, building, private road or driveway within a business or residence district shall stop the vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across the alley, building entrance, road or driveway, or in the event there is no sidewalk area, shall stop at the point nearest the street to be entered where the driver has a view of approaching traffic thereon and shall yield to all vehicles and pedestrians which are so close thereto as to constitute an immediate hazard.
(3) A violation of this section is a noncriminal traffic infraction, punishable as a moving violation as provided in chapter 318. •
The trial court’s interpretation may be correct if the provisions of subsection one are considered in isolation to'the other provisions of the statute. But subsection one does not apply to business or residential districts, subsection two does, and it is undisputed that the events in all three cases occurred in a business district.[1] The trial court’s constricted interpretation of the entire statute renders meaningless the provisions of subsection two and, thus, offends well-established principles of statutory construction. We begin with the principle that “the plain meaning of statutory language is the first consideration of statutory construction.” Stoletz v. State, 875 So.2d 572, 575 (Fla.2004). We continue with the principle .that courts should give full effect to all provisions in a statute to achieve a consistent whole and “should avoid readings that would render part of a statute meaningless.” Larimore v. State, 2 So.3d 101, 114 (Fla.2008) (quoting State v. Goode, 830 So.2d 817, 824 (Fla.2002)); see also Clines v. State, 912 So.2d 550, 557 (Fla.2005); Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992). Although there are others, we need go no further other than provide the following brief analysis 'that applies the two principles just mentioned. Looking' to the provisions of subsection two, we see the requirement that the driver stop before “driving onto a sidewalk or onto a sidewalk area extending across the ... driveway.” Proper consideration of this statutory provision and the plain and ordinary meaning of the words used reveal with clarity that drivers must stop before traversing a sidewalk or sidewalk area to enter an adjacent highway.
*1078 Section 316.125 does not define- sidewalk or sidewalk area, but definitions, of pertinent words and phrases used in the various sections of chapter 316, Florida Statutes, are found in section 316.003 and those words and phrases “shall have the meanings respectively ascribed to them in this section, except where the context otherwise requires.” § 316.003, . Fla. Stat. (2013). The word “sidewalk” is defined as “[tjhat portion of a street between the curbline, or the lateral line, of a roadway and the adjacent property lines, intended for use by pedestrians.” § 316.003(47), Fla. Stat. (2013). We note that section 316.125(2) recognizes that sidewalks or sidewalk areas may extend over driveways because it specifically provides that the driver is to stop “prior to driving onto a sidewalk or onto the sidewalk area extending across the ... driveway.” § 316.125(2), Fla. Stat. (2013). The State contends that proof of a sidewalk extending over the driveways at each location is contained in the record. The State points to numerous photographs (both ground and aerial) and argues that they reveal a sidewalk located between the parking lot and highway that connects to and is intended to extend over the' driveways so pedestrians can walk from one end df the street to the other!
The trial court never addressed the factual issue of whether a sidewalk or sidewalk area extends over the driveways at each location. It appears that the trial court’s erroneous interpretation of section 316.125 got in the way, and so it did not. We have removed that obstacle so the tidal court' can now resolve the issue on remand free of obstruction. We note that Ben Padgett specifically concedes that the trial court misinterpreted the statute and requests that this court reverse the order denying his motion and remand for further proceedings to allow the trial court to apply the correct interpretation. We commend Padgett for his candor.
It remains to consider the specific argument presented by Sean and Coryon Nelson in their briefs, which implicitly concedes that the trial court misconstrued the statute. We note parenthetically that this concession does-not sound the death knell for their suppression motions because the argument assumes there is no sidewalk or sidewalk area over the driveway located at the gas station. Both Sean and Coryon argue that the specific location in the parking lot where their vehicles were initially parked allowed them a view of the highway and whether any pedestrians or vehicles were in the area. They further assert that because they did not see any pedestrian or vehicular traffic, it was- permissible for the vehicles to depart from the parked locations (one a gas pump, and the other at the North part of the lot) and travel through the driveway and onto the highway without stopping. They rely on that part of section 316.125(2), which provides that in the event there is no sidewalk area, the vehicles “shall stop at the point nearést the street to be entered where the driver has a view of approaching traffic thereon and shall yield to all vehicles and pedestrians which are so.close thereto as to constitute an immediate hazard.” § 316.125(2), Fla. Stat. (2013). We- do not know whether the particular location of the parking spot of each vehicle was the location nearest to the highway. In any event, the trial court did not address this factual issue either. Obviously, if a sidewalk area does exist over the driveway, then this argument becomes moot, so we will assume the trial court on remand will resolve the sidewalk issue first.
We conclude that the trial court misinterpreted the statute and thus never considered the issue whether the sidewalk or sidewalk areas extended over the driveways. The trial court also did not consider the issue of whether the nearest point of *1079 observation of Coryon Nelson and Sean Nelson was the location where they were initially parked in the parking lot. Therefore, we reverse the orders under review and remand these cases to the trial court for consideration of these issues consistent with. this;opinion. See State v. Clarke, 147 So.3d 664 (Fla. 5th DCA 2014); Nash, 957 So.2d at 1267.
REVERSED and REMANDED.
• EVANDER, J., concurs.
TORPY, C.J., concurs and concurs specially, with opinion.

. The term "business district" is defined as "[t]he territory contiguous to, and including, a highway when 50 percent or more of the frontage thereon, for a distance of 300 feet or more, is occupied by buildings in use for business.” § 316.003(4), Fla. Stat. (2013).