# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2024-0176
LT Case No. 2021-MM-003066-A

_____

STATE OF FLORIDA,

 Appellant,

 v.

MICHELLE LYNN HOWARD,

 Appellee.

_____

On appeal from the County Court for Seminole County.
John L. Woodard, III, Judge.

James Uthmeier, Attorney General, Tallahassee, and Richard A. Pallas, Jr., Assistant Attorney General, Daytona Beach, for Appellant.

Stuart I. Hyman, of Stuart I. Hyman, P.A., Orlando, for Appellee.


May 9, 2025

BOATWRIGHT, J.

This is an appeal by the State of Florida of the lower court's order granting a motion to suppress evidence from a traffic stop and a subsequent driving under the influence ("DUI") investigation filed by the Appellee, Michelle Lynn Howard ("Howard"). We reverse because the lower court erred in granting

the motion in several respects as more particularly described herein.

I.

On September 21, 2021, an officer with the Casselberry Police Department was on patrol on State Road 436 ("SR 436") within the city limits of Casselberry observing traffic for speed violations. The officer was positioned in a parking lot off of SR 436 so that he could observe traffic from all directions and visually estimate speeds while sitting stationary in his patrol vehicle. He noticed a vehicle moving eastbound down SR 436 at a quick speed and visually estimated that the vehicle was traveling at 69 mph in a 45 mph zone. According to the officer, he was not using a radar device, nor did he pace the vehicle to determine the speed. He merely visually estimated the speed for a matter of a second while still in the parking lot. The officer then pulled out of the parking lot to initiate a traffic stop. He caught up with the vehicle as it was approaching an intersection, at which point he observed that the vehicle was being driven between the right and middle lane (essentially straddling the two lanes) for a period of at least 15 seconds. The vehicle continued on the same path into the intersection and the officer initiated a traffic stop by activating his emergency lights. At that point, the vehicle turned right from the intersection into a convenience store parking lot and then turned left into the parking lot hitting a curb before parking in a parking space. According to the officer at the suppression hearing, the driver of the vehicle was not merging from the center lane to the right turn lane to make a turn, as the vehicle did not make the turn until it was out into the intersection still between the center and right lane. According to the officer, his initial reason for initiating the traffic stop was that the driver was speeding and failed to maintain a single lane in violation of Florida traffic laws.

The officer approached the vehicle and identified the driver as Howard. Upon speaking with Howard, the officer noticed that she had slurred speech and spoke with a thick tongue. In addition, she had a flushed face; glossy, watery, bloodshot eyes; and an odor of alcohol emanating from her person. Howard denied having had any alcohol that evening, but then appeared confused while

2

perusing her purse for her driver's license. Howard again appeared confused when the officer asked her for her registration.

Based on the totality of the aforementioned observations regarding the odor of alcohol coupled with Howard's behavior and driving pattern, the officer suspected that she was under the influence and decided to initiate a DUI investigation. The officer's body worn camera video footage of this interaction, which was entered into evidence, depicts Howard appearing to be visibly intoxicated. Howard declined to participate in field sobriety exercises. As a result, the officer informed Howard she was under arrest for driving under the influence. Howard then refused to step out of the vehicle as the officer requested and resisted his arrest when he physically removed her from the vehicle. He then transported Howard to the Seminole County Jail which was outside the city limits of Casselberry. According to the officer, he transported Howard in furtherance of an investigation that originated in his jurisdiction of Casselberry, Florida. While at the Seminole County Jail, Howard provided two valid breath samples which were taken by an employee of the Seminole County Sheriff's office.

Subsequently, Howard's legal counsel filed a motion to suppress. The trial court granted the motion. In granting the motion, the trial found that: 1) there was no probable cause for the officer to initiate a traffic stop on Howard's vehicle; 2) the officer lacked reasonable suspicion to detain Howard for a DUI investigation, and the resulting investigation yielded insufficient probable cause for the arrest; and, 3) it was impermissible for the officer to ask Howard to perform breath testing after he transported her to the county jail, which was outside of his geographic territory. The State challenges each of these rulings on appeal.

II.

A.

The trial court first erred in finding that there was not a legal basis for the traffic stop involving Howard. In making this determination, we note that initially, the trial court applied the

3

wrong legal standard in making its decision. The trial court, relying on *Whren v. United States*, 517 U.S. 806 (1996), ruled that at a minimum, "probable cause of a violation of a law" is needed to justify a traffic stop, and thus rejected the State's argument that reasonable suspicion is sufficient to justify a stop for traffic infractions.

Florida's courts have routinely discussed *Whren* when holding that probable cause justifies a traffic stop based on a traffic infraction. *See, e.g., Holland v. State*, 696 So. 2d 757, 759 (Fla. 1997) ("The *Whren* Court rejected the reasonable officer test in favor of a strict objective test which asks only whether any probable cause for the stop existed."); *State v. Nelson*, 183 So. 3d 1074, 1076 (Fla. 5th DCA 2015) ("[A] seizure is permissible if the deputy has probable cause to believe a traffic violation has occurred."); *State v. Parker*, 311 So. 3d 1029, 1032 (Fla. 5th DCA 2021) ("[A] traffic stop is considered reasonable under the Fourth Amendment to the United States Constitution 'where the police have probable cause to believe that a traffic violation has occurred.'" (quoting *Whren*, 517 U.S. at 810)).

However, the lower court misinterpreted *Whren* as constricting traffic stops to the standard of probable cause when it ruled that *Whren* was controlling in the State of Florida on the standard applicable to justify a traffic stop. The premise in *Whren*, however, on which Florida courts have primarily relied is based on its holding that an objective, rather than a subjective, standard applies when determining whether a stop is constitutionally reasonable. *See Holland*, 696 So. 2d at 759. Specifically, this Court in *Parker* cited *Whren* for the purpose of rejecting an argument that a traffic stop was invalid because it was pretextual, stating: "While the trial court found the instant traffic stop invalid for being pretextual, the United States Supreme Court has made clear that the constitutional reasonableness of a traffic stop is not dependent on the subjective motivations of the individual officers involved." 311 So. 3d at 1032 (citing *Whren*, 517 U.S. at 812–13).

Our courts have not interpreted *Whren* as imposing an exclusive probable cause standard for an investigatory stop. To the contrary, the Florida Supreme Court, post-*Whren*, opined that "[t]he United States Supreme Court has held that stopping a

vehicle is permissible under the Fourth Amendment only where there is a reasonable suspicion that either the vehicle or an occupant is subject to seizure for a violation of law." *Hilton v. State*, 961 So. 2d 284, 290 (Fla. 2007) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). As the Florida Supreme Court has stated, "a stop for the violation of motor vehicle laws is similar to the investigative detention in [a *Terry* stop] and may be made when there is founded suspicion." *See State v. Frierson*, 926 So. 2d 1139, 1142 (Fla. 2006) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). In line with the Florida Supreme Court's opinions, this Court has held that the standard of law to justify a stop of a motor vehicle is reasonable suspicion. *State, Dep't of High. Safety & Motor Vehs. v. Dean*, 175 So. 3d 939, 940 (Fla. 5th DCA 2015) ("[T]he lower court applied the wrong standard of law to justify a stop of a motor vehicle—probable cause, rather than reasonable suspicion[.]").

"In determining whether an officer had reasonable suspicion in any given case, 'the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Cresswell v. State*, 564 So. 2d 480, 482 (Fla 1990) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). "[W]hile reasonable suspicion 'is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.'" *Hilton*, 961 So. 2d at 294 (Fla. 2007) (citing *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000)). In considering whether an officer had a reasonable suspicion, one looks to the totality of the circumstances to determine whether "the detaining officer [had] 'a particularized and objective basis' for suspecting legal wrongdoing." *Id.* (alteration in original) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

Upon applying the reasonable suspicion standard, we find that the trial court erred in determining that the stop was invalid. While we agree with the trial court that the officer's reason for stopping Howard for speeding is not well-founded based on the lack of specific and articulable facts provided to support a basis for the infraction, *see Dep't of Highway Safety and Motor Vehicles v.*

5

*Roberts,* 938 So. 2d 513 (Fla. 5th DCA 2006), the officer did have reasonable suspicion to believe that Howard failed to maintain a single lane in violation of section 316.089(1), Florida Statutes (2023). As this determination requires us to interpret section 316.089(1), we first look to the text of the statute.

The analysis of a statute turns on the plain language of the text. *Halifax Hosp. Med. Ctr. v. State*, 278 So. 3d 545, 548 n.3 (Fla. 2019) ("The interpretation of a statute begins 'with the plain meaning of the actual language' the statute employs." (quoting *Nat. Auto Serv. Ctrs., Inc. v. F/R 550, LLC*, 192 So. 3d 498, 504 (Fla. 2d DCA 2016))). In interpreting statutes, "every word . . . is to be expounded in its plain, obvious, and common sense," absent some contrary indication in the statute. *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946–47 (Fla. 2020) (quoting *Advis. Op. to Gov. re Implementation of Amend. 4, the Voting Rest. Amend.*, 288 So. 3d 1070, 1078 (Fla. 2020)). When interpreting the statute at issue, "[o]ur objective is to arrive at a 'fair reading' of the text by 'determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.'" *Baldwin v. Lab'y Corp. of Am.*, 396 So. 3d 798, 801 (Fla. 5th DCA 2024) (alteration in original) (quoting *Ham*, 308 So. 3d at 947)).

Further, "[a] fundamental principle of statutory construction (and, indeed, of language itself) [is] that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Id.* (alteration in original) (quoting *Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 324 (Fla. 2022)). As a result, "[c]ontext is a primary determinant of meaning." *Id.* (quoting *Davis*, 339 So. 3d at 324). In considering the context of a statute, we look to "the specific context in which that language is used, and the broader context of the statute as a whole." *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). As such, a "statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts[,]" and is not to be read in isolation, but in the context of the entire section. *Jones v. ETS of New Orleans, Inc.,* 793 So. 2d 912, 914–15 (Fla. 2001).

According to section 316.089:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply:
>
> (1)   A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

§ 316.089, Fla. Stat. (2023). In order to be immune from violating the statute at issue, one must drive their vehicle "as nearly as practicable entirely within a single lane[,]" and in addition, the vehicle "shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

The trial court based its decision on the finding that Howard's driving pattern did not affect any other traffic and thus, there was not a valid basis for the traffic stop.[1] However, the trial court only considered the latter part of the statute (i.e., that "the driver has first ascertained that such movement can be made with safety"), and did not consider whether Howard was driving "as nearly as practicable entirely within a single lane." In accordance with this statutory language, this Court has held that, "irrespective of whether anyone is endangered[,]" a stop is valid for a violation of section 316.089(1), when the driver deviates "from his lane by more than what was practicable." *Yanes v. State*, 877 So. 2d 25, 26–27 (Fla. 5th DCA 2004) (holding when motor vehicle crossed over fog line three times within span of one mile, even though no traffic was

---

[1] The trial court relies on *State v. Riley*, 638 So. 2d 507 (Fla. 1994), to support its position. However, *Riley* dealt with a violation of section 316.155, Florida Statutes, and its interpretation of that statute. The present case deals with a violation of section 316.089(1), which governs a wholly different traffic violation and contains different statutory language than that of section 316.155. In particular, section 316.155 requires that other traffic be affected by the driver's conduct, a requirement which is not present in the language of section 316.089(1).

affected, there still was reasonable suspicion to believe driver had failed to maintain his lane justifying the stop).

The officer testified at the suppression hearing that he observed Howard driving for at least 15 seconds between both the center and the right lane. Regardless of whether Howard affected any traffic or endangered anyone, his testimony established that the vehicle was not driven as nearly as practicable within a single lane. Moreover, this was not a momentary lapse wherein Howard subsequently corrected her vehicle. Rather, Howard continued on this pattern into the intersection without correcting her vehicle until the officer activated his emergency lights. In addition, we find the trial court's assertion that Howard was merging from the center lane to the right lane to make a turn into the parking lot is not supported by competent substantial evidence. In light of the officer's uncontroverted testimony regarding Howard's violation of section 316.089, we determine that there was reasonable suspicion to stop Howard's vehicle for failure to maintain a single lane.

B.

After the trial court found that there was not a legal basis for the traffic stop, the court found there was insufficient evidence to establish reasonable suspicion to detain Howard longer than necessary to issue a traffic citation. Further, the court found that there was no probable cause or reasonable suspicion to require Howard to perform field sobriety exercises or probable cause to place her under arrest as there was no competent substantial evidence to believe that Howard's normal faculties were impaired. We agree with the State that the officer had a reasonable suspicion that Howard was driving under the influence which justified the detention and the resulting investigation yielded probable cause for the arrest.

Florida courts have held that a traffic stop must last no longer than the time it takes to write a traffic citation, but the detention may be prolonged if the law enforcement officer has a reasonable suspicion based on articulable facts that criminal activity was committed or was about to be committed. *State v. Kindle,* 782 So. 2d 971, 974 (Fla. 5th DCA 2001). In the context of a DUI investigation, the Florida Supreme Court has held that a law

enforcement officer may temporarily detain a driver for a DUI investigation based upon a reasonable suspicion. *State v. Taylor,* 648 So. 2d 701, 703–04 (Fla. 1995). The purpose of such investigation is to determine whether probable cause exists for a DUI arrest. *Id.*

"In order to detain someone for a DUI investigation, the officer must have reasonable suspicion that the detainee committed the offense." *State v. Castenada*, 79 So. 3d 41, 42 (Fla 4th DCA 2011). Reasonable suspicion in this context is premised on the totality of the circumstances approach as "observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge and experience." *Id.* Our district courts have found that reasonable suspicion for a DUI may be based on the commission of traffic infractions, an odor of alcohol, and glassy, bloodshot eyes. *Id.* ("[T]he officer observed Defendant speeding, smelled an alcoholic beverage on Defendant's breath, and observed that Defendant's eyes were bloodshot and watery."); *see also State v. Ameqrane*, 39 So. 3d 339, 342 (Fla. 2d DCA 2010) (finding reasonable suspicion for DUI investigation when suspect sped, smelled of alcohol, and exhibited glassy, bloodshot eyes).

Based on a DUI investigation, whether a person has consumed sufficient alcohol to be deemed "under the influence" or impaired to an appreciable degree to be considered driving under the influence is a judgment call made by a police officer based on objective facts and circumstances observed by the officer. *State v. Brown,* 725 So. 2d 441, 443–44 (Fla. 5th DCA 1999). The offense of driving under the influence occurs when a "person is driving or in actual physical control of a vehicle" and "is under the influence of alcoholic beverages . . . when affected to the extent that the person's normal faculties are impaired." *See* § 316.193(1)(a), Fla. Stat. (2021); *see also Hoffman v. State*, 743 So. 2d 130, 131 (Fla. 4th DCA 1999) ("The three elements of DUI are driving, being under the influence, and being impaired." (citing *State v. Weitz*, 500 So. 2d 657 (Fla. 1st DCA 1986))). Although the smell of alcohol is a critical factor, probable cause for a DUI arrest must be based upon more than a belief that a driver has consumed alcohol; it must arise from facts and circumstances that show a probability that a driver is impaired by alcohol or has an unlawful amount of alcohol in his system. *State v. Kliphouse*, 771 So. 2d 16, 22 (Fla.

9

4th DCA 2000); *see Brown,* 725 So. 2d at 444 (noting "under the influence" as used by statute means the driver's normal faculties were "impaired," not simply that the driver had consumed alcohol but the odor of alcohol on a driver's breath is a critical factor in determining whether probable cause existed).

The officer in this case testified that he stopped Howard because he witnessed a driving pattern of failing to maintain a single lane; he then saw the defendant's vehicle making contact with a curb going into the parking lot of the convenience store while she was pulling over. Upon making contact with Howard, the officer noticed slurred speech, thick tongue, and a flushed face. Howard had glossy, bloodshot eyes, as well as the odor of alcohol emanating from her person. He further observed that she appeared to have significant issues locating her driver's license and registration. This was sufficient to detain Howard for a DUI investigation and to request her to perform field sobriety exercises. Once she refused to perform the field sobriety exercises, these same observations provided probable cause for Howard's arrest for driving under the influence. *See Taylor,* 648 So. 2d at 704 (refusal to perform field sobriety exercises admissible as a suspect's consciousness of guilt and can factor into a finding of probable cause).

The trial court in this case stated that it had reviewed body cam footage from the officer on the evening in question and found it to contradict the officer's testimony. However, upon review of the video evidence,[2] the body cam footage does not contradict the

---

[2] The Casselberry police officer was the only witness who testified at the suppression hearing regarding the traffic stop and subsequent DUI investigation. He was wearing a body camera during his investigation. The video was admitted into evidence and is provided in the record on appeal. We are therefore "in the same position to review it as the trial court." *See Baxter v. State*, 389 So. 3d 803, 803 n.2 (Fla. 5th DCA 2024); s*ee also State v. Vazquez*, 295 So. 3d 373, 378 (Fla. 2d DCA 2020) ("Our record contains the recording of Vazquez's interview, and we 'may independently review the audio recording of an interview to assess whether competent, substantial evidence supports the trial court's

officer's testimony as the trial court suggests. For example, the court stated that Howard was able to articulate where she was coming from and that she was able to readily locate her driver's license and registration. However, it is evident in viewing the video that Howard took several seconds (and appeared confused) to respond to the officer's question regarding where she came from; she took a significant amount of time to find her driver's license in her wallet (including, as the officer testified to, combing the wallet several times and throwing her hands up in frustration before finally finding it, fumbling and dropping it, and then retrieving it to provide to the officer); her speech seemed slow and slurred; and she exhibited an abnormal degree of confusion when asked to provide her insurance and registration. The video also does not refute the officer's testimony that Howard had a strong odor of alcohol and that her eyes were glassy and bloodshot. Thus, our review of the video footage leads us to the conclusion that the court's findings based on the video were unsupported.

C.

Finally, the State argues the court erred when it determined the officer lacked authority to require Howard to submit to a breath test outside of the city of Casselberry and we agree. The State contends the court relied on inapposite cases from other district courts of appeal in determining that the officer lost the authority to require Howard to take a breath test when he crossed over the Casselberry city limits and ignored binding precedent from this Court even though it was presented to the court during the suppression hearing. Why the lower court overlooked this Court's binding precedent is unclear. *See Pardo v. State*, 596 So. 2d 665, 667 (Fla. 1992) ("[I]f the district court of the district in which the trial court is located has decided the issue, the trial court is bound to follow it. Contrarily, as between District Courts of Appeal, a sister district's opinion is merely persuasive." (quoting *State v. Hayes*, 333 So. 2d 51, 53 (Fla. 4th DCA 1976))); *see also State v. Washington*, 114 So. 3d 182, 185 (Fla. 3d DCA 2012) (noting while a lower court is free to disagree and to express its disagreement with an appellate court ruling, it is duty-bound to

findings.'" (quoting *State v. Thompson*, 193 So. 3d 916, 919–20 (Fla. 2d DCA 2016))).

11

follow it, and the Florida Supreme Court has repeatedly articulated, "[t]he decision of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court." (quoting *Stanfill v. State*, 384 So. 2d 141, 143 (Fla. 1980))).

In *State v. Torres*, 350 So. 3d 421, 424 (Fla. 5th DCA 2022), this Court clearly held that there is an exception to the limitation of municipal law enforcement officers' utilization of powers outside of their territory where the officer continues "to act or investigate outside of his or her geographic jurisdiction" and "the subject matter of the officer's investigation originates inside their city limits." (citing *Knight v. State*, 154 So. 3d 1157, 1159 (Fla. 5th DCA 2022); *Nunn v. State*, 121 So. 3d 566, 568 (Fla. 4th DCA 2013)). This Court has applied the "ongoing investigation exception" to DUI investigations that originate in an officer's municipality but then result in the suspect being transported to a neighboring area outside the city limits for a request for administration of a breath test. *Torres*, 350 So. 3d at 426. This case falls squarely within the ambit of *Torres*, and the lower court offered no explanation or justification for wholly ignoring *Torres* in favor of precedent from another district.[3] Therefore, we find *Torres* controlling and we hold that the court erred in finding that the officer did not have the authority to request the employee with the Seminole County Sheriff's Office to administer the breath test.[4]

---

[3] The State, in its initial brief, acknowledges there is a case emanating from the Sixth District (which was not cited by the lower court), *State v. Repple*, No. 6D23-1448, 2024 WL 2983786 (Fla. 6th DCA June 4, 2024), in which it disagreed with this Court's holding in *Torres* that there is an ongoing investigation exception to a law enforcement officer's jurisdiction outside his municipality and certified conflict to the Florida Supreme Court. Review was granted on January 16, 2025, *State v. Repple,* 49 Fla. L. Weekly D1296 (Fla. Jan. 16, 2025).

[4] We note that the Casselberry police officer did not read implied consent to Howard nor administer the breath test. Although he made this request, the reading of the implied consent and administering of the breath test was done solely by an employee of the Seminole County Sheriff's Office. The trial court's ruling is one that could be considered a slippery slope, as local law

## III.

We reverse the trial court's order suppressing the evidence obtained as a result of the stop of Howard's vehicle and the subsequent DUI investigation. The trial court erred when it ruled there was no legal basis for the traffic stop; and it also erred when it found there was neither reasonable suspicion to conduct the DUI investigation nor probable cause to justify the arrest of Howard. We also find that the breath test results were lawfully obtained under our precedent in *Torres,* 350 So. 2d at 424. Therefore, we reverse and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.

EDWARDS, C.J., and PRATT, J., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

---

enforcement agencies routinely send requests outside of their jurisdiction for testing of evidentiary items such as drugs, blood, fingerprints, bullets, and firearms in furtherance of their investigation which appears to be no different than what took place in this case.